650 So.2d 676 (1995)
SACRED HEART HOSPITAL OF PENSACOLA, Appellant,
v.
William I. STONE, Appellee.
No. 93-2828.
District Court of Appeal of Florida, First District.
February 16, 1995.
*677 Steven J. Baker and Ann J. Tipton of Baker, Duke & Tipton, P.A., Pensacola, George N. Meros, Jr., and Mary W. Chaisson of Rumberger, Kirk & Caldwell, Tallahassee, for appellant.
Louis K. Rosenbloum, Frederic G. Levin and Martin H. Levin of Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A., Pensacola, for appellee.
ERVIN, Judge.
This is an appeal from a final judgment in a personal injury action awarding damages to appellee, William I. Stone. Appellant, Sacred Heart Hospital of Pensacola, seeks reversal based on (1) inflammatory arguments by Stone's counsel which allegedly violated Rule 4-3.4(e) of the Rules Regulating The Florida Bar, (2) erroneous admission of evidence regarding a Department of Transportation (DOT) inspection report, (3) erroneous admission of Mary Blanchard's personnel evaluation, (4) the award of damages by the jury based on passion and prejudice, and (5) the cumulative effect of the multiple errors. We agree with appellant that a new trial is required based on the improper arguments and, therefore, reverse in part and remand for new trial.
This case arises from injuries suffered by appellee in a vehicular accident which occurred on State Road 97 near Walnut Hill, Florida, north of Pensacola. The accident involved a bus owned by Sacred Heart and driven by its employee Mary Blanchard, a logging truck owned by Andrews Trucking and driven by its employee Leon Davis, and a Ford flatbed truck owned by American Welding and operated by Stone.
At 9:30 a.m. on March 11, 1991, Blanchard was driving the Sacred Heart bus north on State Road 97, a two-lane road running north and south with a 55 mile-per-hour speed limit. Just behind the bus, also proceeding northbound, was Stone's vehicle, then transporting highly flammable acetylene tanks. At the same time, Davis's logging truck was *678 heading south at a point near the Masonic Lodge located just off State Road 97.
Desiring to enter the lodge's parking lot, Blanchard turned the bus left across the southbound lane immediately in front of Davis's oncoming logging truck. Although she had unrestricted visibility, she testified she never saw the truck before she began her turn into its path and was not aware of its presence before impact.
Davis, who had been driving logging trucks for over 20 years, stated that when he encountered the bus in his lane, he first gradually applied the brakes to prevent his rig from jackknifing, and then depressed them a second time, while trying to go around the bus in the opposite lane to avoid colliding with it broadside. Upon entering the opposite lane, Davis noticed Stone's vehicle for the first time, whereupon he attempted to pull by both it and the bus, but unfortunately his truck ricocheted off the bus, struck Stone's vehicle and overturned. Davis explained he could not avoid the collision by turning to the right, because of a hill on that side of the road, and that he followed his course of action in order to avoid killing a number of people inside the bus. He further testified that he had checked his brakes on the day of the accident, as was his daily practice.
Stone, severely injured, sued Andrews Trucking and Sacred Heart Hospital, but settled with Andrews Trucking before trial. At trial, Stone contended that Blanchard and Sacred Heart were solely responsible for the accident, and that Davis had performed masterfully in attempting to avoid the collision. Stone presented testimony from eyewitnesses and investigators stating that the logging truck could not have avoided the collision, which was confirmed by Stone's accident reconstructionist who testified that Davis had little or no time to react or bring the truck to a complete stop before the collision.
Sacred Heart, on the other hand, conceded that Blanchard was negligent in making the left turn, but argued that her negligence was not the legal cause of the accident. Rather, it asserted that the logging truck's defective brakes were either the sole cause of the accident or a substantial contributing factor. Sacred Heart produced expert testimony demonstrating that the brakes on the front axle of the truck were disconnected at the time of the accident, and that the braking systems on the remaining axles contained serious defects which substantially diminished the ability of the truck to brake in a safe and effective manner. Sacred Heart also maintained that the driver of the logging truck was either inattentive by failing reasonably to perceive the dangerous situation ahead, or that he perceived the risk but chose to gamble that the bus would complete its turn and exit the southbound lane before his truck came upon it.
During trial, Stone was allowed to question Trooper Maddox, who investigated the accident and who, over Sacred Heart's hearsay objection, testified that the owner of the logging truck had given him a DOT inspection report at the accident scene, allegedly showing the results of an examination conducted on the truck a few days before the accident. Additionally, Stone was allowed to introduce a personnel evaluation of Blanchard performed after the accident, indicating that Blanchard's driving ability had been rated below standard because she exhibited careless and improper driving during the accident. Sacred Heart objected to this document, because its author had based her evaluation on the fact that Blanchard had received a traffic citation as a result of the accident, and section 316.650(9), Florida Statutes, which prohibits introduction of a traffic citation into evidence.
The jury returned a verdict finding Sacred Heart 100 percent responsible for Stone's injuries, and awarded him $4,404,599 in damages.
Appellant complains of multiple comments Stone's counsel made in opening statement and closing arguments, which it contends violated Rule 4-3.4(e) of the Rules Regulating The Florida Bar. That rule provides:
A lawyer shall not:
(e) in trial, allude to any matter that the lawyer does not reasonably believe is relevant or that will not be supported by admissible evidence, assert personal knowledge *679 of facts in issue except when testifying as a witness, or state a personal opinion as to the justness of a cause, the credibility of a witness, the culpability of a civil litigant, or the guilt or innocence of an accused.
Sacred Heart divides its argument under this point into four sections. In the first, it complains that Stone's counsel alluded to irrelevant, prejudicial and inflammatory matters, and it cites numerous comments made during both opening statements and closing arguments during which Stone's counsel repeatedly used the word "ridiculous." One example includes the following statement:
The best way to determine how substantial this case is, is for you to look at the extent the lawyers in this case are going to go to try to convince you, with what we consider to be ridiculous testimony.
Other incidents involve plaintiff's counsel arguing that the defendants' evidence was "what we consider to be ridiculous testimony," and that "it's almost to the point of being ridiculous for this lady to blame or for the lawyers to blame this guy for this accident."
Sacred Heart next contends that Stone's counsel made improper references to matters outside the record, pointing to the following statement in which counsel informed the jury that Stone had told him during trial that he believed one of the defense experts was lying:
Walking out of court yesterday, Billy wants to know what are they going to do to Mr. Wiggins. For what? Well, he didn't tell the truth. He's so honest that he would believe that people who take an oath are going to tell the truth.
Appellant argues that the above statements had the improper effect of bolstering Stone's credibility.
Sacred Heart refers also to Stone's counsel making frequent expressions of personal opinions on the justness of his client's cause, the credibility of a witness and the degree of culpability of a civil litigant. It emphasizes the following comments counsel made during opening statements:
Then I can sum up for you what the pulpwood truck driver did. I think he did an exceptional job of keeping this accident from involving, as you will see as we talk to you about it, a bunch of fatalities out there. He did a beautiful job. He's an experienced pulpwood truck driver, tractor-trailer driver, and he did an outstanding job.
Additionally, Sacred Heart refers to the following comment: "But, I don't believe there is any question. They admit she was at fault. She admits she was at fault." (Emphasis added.)
In the final section of its argument, Sacred Heart contends that the attorney's conduct makes a new trial necessary, because he incited the jury to punish the defendants by their verdict by saying that if the jury should find the defendants' defenses not credible, it should deal "very, very harshly" with defendants.
Considering the number of complaints, one would assume that Sacred Heart raised numerous objections below; however, this is not the case. Only two objections were made during opening statements, both of which asserted only that Stone's counsel was presenting argument; both of which were sustained. Sacred Heart objected but once during closing argument, in which it argued that Stone's counsel was implying that the jury should punish the defendants, but Stone explained the comment and no ruling was made. Thus, the vast majority of the comments which Sacred Heart now contends were highly prejudicial and inflammatory were made without any objection. As Stone points out in his brief, Sacred Heart addressed in its motion for new trial only counsel's comment urging the jury to deal harshly with the defendants and raised only the complaint about the attorney's use of the word "ridiculous" in a memorandum filed in support of the motion, even though the trial transcript had been prepared and was then available. In reversing as to this issue, we acknowledge that a number of cases state that even if there exists fundamental impropriety in a lawyer's assertion of his own personal knowledge of facts in issue proscribed by the Code of Professional Responsibility, *680 such impropriety does not necessarily amount to fundamental error. See Blue Grass Shows, Inc. v. Collins, 614 So.2d 626 (Fla. 1st DCA), review denied, 624 So.2d 264 (Fla. 1993); Wasden v. Seaboard Coast Line R.R. Co., 474 So.2d 825 (Fla. 2d DCA 1985), review denied, 484 So.2d 9 (Fla. 1986); Nelson v. Reliance Ins. Co., 368 So.2d 361 (Fla. 4th DCA 1978).
Nevertheless, Sacred Heart cites numerous cases, from this district and others, which have granted new trials caused by improper closing arguments violating the Code of Professional Responsibility, even in the absence of objection. For example, in Pippin v. Latosynski, 622 So.2d 566 (Fla. 1st DCA 1993), only one objection was made at trial to plaintiff's comments referring to the defense's extensive "damage control" in an attempt to convince the jury that plaintiff had not suffered a permanent injury. No objections were made, however, to other comments by counsel, notably statements that the defendants had failed to call his client, who was a priest, "Father," and that he was "outraged" at the defense because it did not admit liability.
In reversing, this court found that the cumulative effect of the comments was prejudicial, and that they pervaded the entire trial and constituted fundamental error. It concluded that arguments in derogation of rule 4-3.4 will not be condoned even in the absence of an objection. Id. at 569. See also Silva v. Nightingale, 619 So.2d 4 (Fla. 5th DCA 1993) (where counsel only objected to two of five improper comments, reversal was warranted because the combined effect of misconduct was so extensive that its influence pervaded the trial, gravely impairing calm and dispassionate consideration of the evidence and merits by the jury); Riley v. Willis, 585 So.2d 1024 (Fla. 5th DCA 1991) (expressions of personal belief by attorney created reversible error despite the absence of a contemporaneous objection as they were a breach of rule 4-3.4 and the combined effect of the comments required reversal); Stokes v. Wet `N Wild, Inc., 523 So.2d 181 (Fla. 5th DCA 1988) (comments that courts were overcrowded; that $48,300 for damages was ridiculous; that counsel did not think the plaintiff's witnesses were reasonable, and that he did not believe the plaintiff's testimony was true, all of which violated rule 4-3.4, required reversal based on their combined effect); Schreier v. Parker, 415 So.2d 794 (Fla. 3d DCA 1982) (arguments in derogation of Code of Professional Responsibility will not be condoned even without objection).
We consider the same rationale applies to the instant case in view of the repeated improper comments of counsel. Specifically, the comments that the defense's theory of fault was "ridiculous," that Sacred Heart presented "ridiculous" testimony, and that he thought the logging truck driver did an exceptional job in avoiding fatalities are all violative of rule 4-3.4(e), in that they constitute the attorney's personal opinions as to the justness of the cause and the culpability of a civil litigant. In addition, the comment concerning Stone's information that the expert had lied was clearly violative of the rule as it referred to a matter outside the record which was not supported by the evidence. Finally, counsel's invitation to deal harshly with the defendants was also improper. Based on these numerous violations of rule 4-3.4(e) and other improper comments, reversal and remand for new trial is appropriate under Pippin, Riley, Stokes, Schreier and Silva.
As a result of our disposition of the previous point, it is unnecessary for us to consider the remaining issues. Nevertheless, because the case may be tried anew, we consider it helpful to address some of the evidentiary issues raised. Turning first to the admission of evidence involving the DOT inspection report, Trooper Maddox was allowed to testify over Sacred Heart's hearsay objection that the owner of the logging truck had given him a DOT inspection sheet prepared within one week after the accident which indicated that the truck had passed all phases of a DOT safety inspection, including a check of the brakes. The court allowed the testimony on the ground that it was not offered to prove the truth of the matter asserted, but rather was introduced to show the owner's knowledge concerning the maintenance *681 of the truck.[1] Such was a proper reason for admitting the testimony. See 1 Charles W. Ehrhardt, Florida Evidence § 801.4, at 564 (1994 ed.) ("An out-of-court statement by a garage mechanic to A that A's brakes were defective is not hearsay if it is offered to prove that A had notice of the defective brakes.").
Nevertheless, Stone's counsel referred to the fact, during closing argument, that the DOT had inspected the truck days before the accident in rebuttal to Sacred Heart's expert testimony that the logging truck's brakes had dirt and oil on them and there were bad parts. Thus, it appears that counsel was offering the evidence to prove the truth of the matter asserted, i.e., that the brakes were not defective, and therefore could not be the cause of the accident, and not as proof of the owner's knowledge. In that regard we refer the parties to Conley v. State, 620 So.2d 180 (Fla. 1993), and Andalora v. Lindenberger, 576 So.2d 354 (Fla. 4th DCA 1991).
Turning to the admission of Blanchard's personnel evaluation, we note that Joan Anderson, Blanchard's supervisor, commented in her evaluation that "Mary's driving ability is rated below standard due to the mobile health unit accident that occurred on March 4, [11,] 1991. Mary exhibited careless and improper driving." Additionally, Ms. Anderson observed that the mobile health unit van had been out of order for approximately four months, because of the accident "resulting from Mary's careless and improper driving."
Sacred Heart asserted below and on appeal that it was error to admit the evaluation, because Ms. Anderson testified on voir dire outside the jury's presence that her statements about Blanchard's careless driving were based on the fact that Blanchard had been issued a traffic citation, and therefore its admission violated section 316.650(9), Florida Statutes (1990), prohibiting the introduction of a traffic citation into evidence at any trial. As the statements in the personnel evaluation were based on the traffic citation, we consider the evaluation should have been excluded under section 316.650(9). See Duval Motor Co. v. Woodward, 419 So.2d 303 (Fla. 1982).
REVERSED in part and REMANDED for new trial.
JOANOS and MINER, JJ., concur.
NOTES
[1] Sacred Heart made an issue of the owner's knowledge of the truck's condition in its third-party complaint filed against the trucking company in which it alleged that the brakes were defective and/or improperly or inadequately maintained; in its pretrial memorandum which claimed the truck owner was negligent for failing to adequately maintain the brakes; in its expert testimony concerning the numerous deficiencies with the brakes; in its requested jury instruction that the jury could consider the negligence of the trucking company in the maintenance of the truck; and in its insistence that the truck owner and driver be included on the verdict form for the purpose of apportioning liability.