674 So.2d 777 (1996)
BAPTIST HOSPITAL, INC., Appellant,
v.
Malcolm Keith RAWSON, Appellee.
No. 95-2237.
District Court of Appeal of Florida, First District.
April 24, 1996.
Rehearing Denied June 19, 1996.
*778 S. William Fuller, J. Craig Knox and Marjorie M. Cain of Fuller, Johnson & Farrell, P.A., Tallahassee, for Appellant.
Frederic G. Levin, Robert M. Loehr and Martin H. Levin of Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A., Pensacola, for Appellee.
PER CURIAM.
This is an appeal from a final judgment in a medical malpractice action awarding damages to the appellee, Malcolm Keith Rawson. Appellant, Baptist Hospital, seeks reversal based on the following: (1) inflammatory arguments by Rawson's counsel which violated Rule 4-3.4(e) of the Rules Regulating the Florida Bar; (2) the trial court's failure to direct a verdict for the defendant based upon the hospital's statutory immunity for negligent treatment rendered in an emergency room; (3) the trial court's failure to direct a verdict for the defendant based upon the absence of proximate cause; and (4) the trial court's failure to order a mistrial when Rawson's counsel mentioned insurance during voir dire. We agree with appellant that a new trial is necessary in light of the improper arguments of trial counsel.
Rawson surfaced from a scuba dive in the Gulf of Mexico off Pensacola with symptoms of decompression sickness, commonly known as "the bends." Evidence presented at trial established that full recovery was a virtual certainty with timely treatment in a hyperbaric chamber within two hours of the onset of symptoms. The chances for full recovery would decline over time, however, so that after four hours an untreated bends patient would more likely than not sustain permanent injuries. Rawson was on shore within 90 minutes, at which time he was met by ambulance and evaluated by emergency medical technicians. The patient was ready for transport within another 10 minutes but, rather than take him to an available hyperbaric chamber at the Navy Air Station less than 1½ miles away, Baptist personnel ordered the ambulance to wait for a Life Flight helicopter transport. In addition to the delays occasioned by the decision to use Life Flight, Baptist then decided to transport Rawson to its emergency room where there was no chamber. Finally, Baptist's decision to transport Rawson to Panama City for hyperbaric treatment resulted in Rawson not entering a chamber within the critical four hour period. Rawson was left with paraplegia and brought suit against Baptist.
At trial, Rawson posited that Baptist was negligent in delaying his hyperbaric treatment, and in transporting him at an altitude and with an intravenous solution that exacerbated his condition. Baptist's primary defense was that its physicians deemed emergency room evaluation necessary to rule out the possibility that Rawson was suffering from "near drowning"a condition not subject to hyperbaric treatment, in which the presence of water in the lungs produces pulmonary edema. Rawson countered this defense with evidence that medical records produced at the time made no mention of near drowning, and the first mention of the condition came in a record that was generated one year after the incident.
During closing argument, Rawson's counsel, Frederic G. Levin, made numerous comments that Baptist now contends were improper and mandate a new trial. Some of the more extreme comments include Mr. Levin's assertion that the decision to take Rawson to Baptist's emergency room "was the most ridiculous decision that anybody has ever made in history." Returning to this theme, counsel stated:
Here's a patient laying there ... and these idiots are coming in with Life Flight and picking him up and actually taking off 30 minutes later, when time is of the essence, minutes and seconds count.... It's a tragedy of errors. Everything these people did while he's sitting there is ridiculous.
Baptist's Dr. Lohstreter had testified that emergency room evaluation was necessary because treatment of near drowning would *779 require a device to generate positive-end expiratory pressure (PEEP) that Baptist had in its emergency room but which was not available at the Navy chamber. Mr. Levin described this testimony as "the company linethat something could happen in the chamber and you got to get the PEEP machine in. I still don't know what in the world they are talking about." Referring to Baptist's defenses generally, Mr. Levin remarked:
None of these things are believable, but when you think about it, it is so unbelievable... it's insulting to you that he would think that you might believe this. It's also worse, and it's an insult to your system of justice. No one, not a president or a doctor, is above the law.
Mr. Levin went on to tell the jury that his whole case was made possible by the fortuitous discovery of a Navy document which proved that Baptist knew the Navy chamber was available for Rawson: "Something happened that said, the good guys are going to win this time."
At this point, counsel turned his attention to what he perceived to be the jury's mission:
Do not grant this hospital and Life Flight and its emergency room immunity for irresponsible acts. Don't grant them immunity from the incredible stories and what happened after this accident. Because if doctors and hospitals have no responsibility for their bad acts, then this breeds bad medicine. This is not what the medical community wants in this case. How do I know? You think about this. In this whole case with all the emergency room doctors in Pensacola and Panama City, not oneAtwell testifies against him. Emergency room Doctor Speer testifies against him. Not one doctor came upand that doesn't happen in medical malpractice cases. Usually the doctor says, I did everything I could, and you've got the whole community of doctors saying, he was trying to do his best. It didn't happen here.... This was absolutely wrong.... If you let them get away with irresponsible medicine, then you breed irresponsible medicine.
Near the end of his argument, Mr. Levin described his reaction the night after seeing his client's "day-in-the-life" video at trial:
I woke up, it was about 2:30, three o'clock in the morning, in just a cold sweat, and somehow I had transposed myself into Keith. It wasI mean, it was like a nightmare and I was sweating. And I said, listen, calm down. Your health is reasonably good. You've got children and grandchildren. Everything is fine. I still couldn't go back to sleep, and it was that nightmare. And then I got to thinking, you know, every day, every day that he wakes up, he wakes up to this nightmare.
Defense counsel offered no objection to these comments, but made them the subject of an unsuccessful post-trial motion.
At oral argument, Mr. Levin acknowledged that his comments violated Rule 4-3.4 of the Rules Regulating the Florida Bar,[1] but he urged affirmance on the grounds that Baptist failed to object to the comments. We reject this argument in this case, having held that arguments in derogation of the rule that are so pervasive as to effect the fairness of the proceeding will not be condoned even in the absence of an objection. See Sacred Heart Hospital of Pensacola v. Stone, 650 So.2d 676 (Fla. 1st DCA), rev. denied, 659 So.2d 1089 (Fla.1995); Pippin v. Latosynski, 622 So.2d 566 (Fla. 1st DCA 1993). We note that the comments in the instant case are more egregious than those Mr. Levin made in Sacred Heart Hospital. As in Sacred Heart Hospital, we must reverse the final judgment and remand for a new trial based upon counsel's improper comments. We have considered the other issues raised on appeal, but find they merit neither discussion nor reversal.
*780 REVERSED in part and REMANDED for new trial.
MINER, WEBSTER and LAWRENCE, JJ., concur.
NOTES
[1] Rule 4-3.4(e) provides that a lawyer shall not:

(e) In trial, allude to any matter that the lawyer does not reasonably believe is relevant or that will not be supported by admissible evidence, assert personal knowledge of facts in issue except when testifying as a witness, or state a personal opinion as to the justness of a cause, the credibility of a witness, the culpability of a civil litigant, or the guilt or innocence of an accused.