677 So.2d 20 (1996)
Aurelio GARCIA and Alina Garcia, his wife, Appellants,
v.
EMERSON ELECTRIC CO., a Missouri corporation, etc., Appellee.
Nos. 95-966, 94-2723.
District Court of Appeal of Florida, Third District.
June 19, 1996.
Rehearing Denied August 14, 1996.
Stabinski & Funt and Luis Stabinski, Miami, Sams, Martin, Spier, Lister & Virgin, Coral Gables, Hicks, Anderson & Blum and Bambi Blum, Miami, for appellants.
Holland & Knight and Daniel S. Pearson and Lenore C. Smith, Miami, Stites & Harbison, Jeffersonville, IN, and John L. Tate, Birmingham, AL, for appellee.
Before GODERICH, GREEN and FLETCHER, JJ.
PER CURIAM.
Aurelio Garcia and his wife Alina initiated this products liability action after Aurelio sustained serious injuries in a fall allegedly caused by a defective ladder manufactured by Emerson Electric Co. This is the second appeal of this case after a jury verdict.[1] We unfortunately must reverse and remand for yet a third trial upon our finding that the trial court abused its discretion when it reversed its pretrial ruling after plaintiffs had substantially completed their case in chief to permit Emerson to introduce additional expert evidence which could not be reviewed by plaintiffs' expert until the day of the trial.
We note at the outset that Emerson did not have the subject testing done for the first trial. It retained its expert, Ralph Barnett, for the second trial and Barnett apparently subjected the ladder to a number of tests he devised to determine how the ladder behaved when stressed. Barnett had not completed all of his tests when he gave his pretrial deposition on May 12, 1994. At the time, Barnett testified and gave his expert opinion as to his completed tests and described additional ongoing tests. When the ongoing tests were finally completed, videotapes of the tests were sent to plaintiffs' counsel a week *21 to ten days prior to trial. At that time, however, the Garcias' expert, Howard Harrenstein, was out of town and unavailable to review the tapes of the completed tests. Counsel for both parties videotaped Barnett's trial testimony on Friday, July 14, 1994.[2]
Trial commenced on the following Monday. That was the first time that Harrenstein had an opportunity to review the tapes of the previously uncompleted tests that Emerson intended to rely upon at trial. Thereupon, the Garcias made a pretrial motion to exclude all videotapes of the tests. The trial court, however, ruled that the videotapes of the tests actually completed at the time of Barnett's May 12 deposition would be admissible but the tests which were uncompleted at that time would be excluded. The trial proceeded and the plaintiffs had substantially completed their case in chief, including Harrenstein's testimony, when Emerson notified the court that it was having difficulty editing the videotapes of the testing to redact the excluded evidence. At that time, over strenuous objection by plaintiffs, the trial court reversed its pretrial ruling to allow the previously excluded tests to be admitted. The court concluded that any prejudice caused by the admission of the previously excluded evidence could be cured by the plaintiffs on rebuttal. The court further denied the plaintiffs' request to allow Harrenstein to sit in the courtroom during Barnett's videotaped trial testimony because both parties had invoked the rule of sequestration at the start of the trial. As a result, Harrenstein never knew what Barnett's opinions about these additional tests were prior to taking the stand on rebuttal. The Garcias' motion for a mistrial was also denied.
On this appeal, the Garcias complain, among other things, that they were prejudiced by the trial court's abrupt about face ruling on the admission of these additional tests after they had substantially completed their case in chief. They essentially argue that their expert was unreasonably forced to scurry during trial to attempt to respond to the additional testing and that their expert did not have adequate preparation time to effectively respond to Emerson's expert evidence. They further assert that this evidence was made a feature of the trial by Emerson. As a result, they claim that they were unduly prejudiced and are entitled to a new trial. We agree.
We conclude that the trial court abused its discretion when it reversed its pretrial ruling midway through the trial to permit evidence of Emerson's additional tests where we find that plaintiffs' expert did not have sufficient time to sufficiently respond to the same on rebuttal. See Southern Bell Tel. & Tel. Co. v. Kaminester, 400 So.2d 804 (Fla. 3d DCA 1981). As stated in Grau v. Branham, 626 So.2d 1059, 1061 (Fla. 4th DCA 1993):
It is not enough that the defendant simply knows what a witness may say before he testifies. Prejudice also exists by the fact that appellant is unable to counter the offered testimony. * * * Furthermore, we strongly feel that once the trial starts the parties' attorneys should be allowed to concentrate on the presentation of the evidence at hand. Neither side should be required to engage in frantic discovery to avoid being prejudiced by the intentional tactics of the other party.
The prejudice was further enhanced, we think, when the trial court refused to allow Harrington to sit in court when the videotape of Barnett's trial testimony was being shown.
Thus we must remand this case for a third trial. We note in passing that neither side has exactly covered itself in glory with its behavior during the course of this long and protracted litigation. Perhaps the third time will indeed be the charm.
We have considered the remaining points raised on appeal and find them to be without merit.
Reversed and remanded.
NOTES
[1] The first trial resulted in a plaintiff's verdict for over $9 million. This court reversed, Emerson Elec. Co. v. Garcia, 623 So.2d 523 (Fla. 3d DCA 1993) and remanded for a new trial because of evidentiary error and egregiously improper arguments made by plaintiff's counsel.
[2] Barnett was scheduled to be out of town during the time scheduled for the trial of this cause.