715 So.2d 370 (1998)
Ronald SIMMONS and Mildred Arlette Simmons, Appellants/Cross-Appellees,
v.
Doris SWINTON and Willie J. Swinton, Appellees/Cross-Appellants.
No. 97-26.
District Court of Appeal of Florida, Fifth District.
August 14, 1998.
Richard A. Sherman of Richard A. Sherman, P.A., Ft. Lauderdale, and Patricia E. Garagozlo of Patricia E. Garagozlo, P.A., Melbourne, for Appellants/Cross-Appellees.
Robert T. Burger of Burger & Paulk, P.A., Indian Harbour Beach, for Appellees/Cross-Appellants.
THOMPSON, Judge.
Ronald and Mildred Simmonses ("the Simmonses") appeal from an order granting Doris and Willie Swinton's ("the Swintons") motion *371 for new trial because of improper closing argument of the Simmonses' counsel. We reverse the order granting a new trial and remand for entry of judgment in accordance with the jury's verdict in favor of the Simmonses. See Hagan v. Sun Bank of Mid-Florida, N.A., 666 So.2d 580 (Fla. 2d DCA 1996).
In the order granting the motion for new trial, the court found:
The improper statements of defense counsel in closing argument constituted fundamental error. Defense counsel stated the Plaintiff's treating physician had self-interested motives in assigning Plaintiff a permanent impairment rating, and stated that "based on his care, we know that he was negligent." Schubert v. Allstate Insurance Co., 603 So.2d 554 (Fla. 5th DCA 1992).
Defense counsel made numerous statements that alluded to matters not in evidence and made statements of personal opinions as to the credibility of witnesses. Walt Disney World Co. v. Blalock, 640 So.2d 1156 (Fla. 5th DCA 1994). Where prejudicial conduct in its collective import is so extensive as to pervade a trial, a new trial should be awarded regardless of the want of an objection. Silva v. Nightingale, 619 So.2d 4 (Fla. 5th DCA 1993). Defense counsel's statements were so pervasive, inflammatory and prejudicial as to preclude the jury's rational consideration of the case.
We reverse because, first, the argument was not fundamental error, and the Swintons were therefore required to object during the argument. Second, the Swintons' counsel admitted that his failure to object was a tactical decision.
This personal injury case arose from a rear end collision. Doris Swinton was sitting in the front passenger seat and Willie Swinton, her husband, was at the wheel, when their car was struck from behind by the Simmonses' car. At the time of the accident, the Swintons were stopped for a red light. Mildred Simmons, who was driving, testified that the impact was slight and that there was no damage to either car. Willie Swinton testified that the only damage was to the rubber bumper, but that he pushed the dent out with his hand. He stated that his car was propelled forward six to ten feet. He also stated that neither he nor his two grandchildren, who had been in the rear seat, suffered any injuries. However, he took his wife to the doctor the following day because she complained of pain. The Simmonses' theory was that the symptoms of which Doris Swinton complained were unrelated to the accident.
Swinton testified that she had been under Dr. Weiss' care for strokes since 1990. she testified that before the accident the strokes caused a weakness in her right shoulder. Before the accident, she had fallen on several occasions and had injured herself on at least one of those occasions. Because of the car accident, she testified, she had headaches, pain in her neck, trouble sleeping, and numbness in her left shoulder. She could no longer sew, operate a vacuum cleaner, do crafts, or visit her children. She no longer engaged in church activity or sang in the choir, and she did not like social activity because she did not like being around people. She testified that she no longer had a good relationship with her husband and could not communicate with him.
Dr. Weiss, her neurologist, testified that he had been treating Swinton since 1990 and that he had seen her the morning of the accident for treatment of seizures and severe headaches. Dr. Weiss detailed the tests he had performed on Swinton and opined that she had developed carpel tunnel syndrome which he believed was from bracing during the accident. He also found her to have a pinched nerve and a bulged disc with radiating symptoms in the right arm. She also had inflammation of the cervical spine and some inflammation of the thoracic spine. He stated that Swinton sustained permanent injuries within a reasonable degree of medical probability and that they were not related to the strokes. Dr. Weiss testified that, before the car accident, Swinton had pounding pain on the right side of her head, with severe headaches, dizziness, nausea, photophobia (sensitivity to light) and phonophobia (sensitivity to sound). She also had a shooting pain which radiated into the right side of her head. On *372 the day of the accident when he saw her, she told him that the prior weekend she had fallen and hit her head and right shoulder on a table.
Dr. Greenspoon, an orthopedic surgeon, testified that he saw Swinton twice after the car accident. In his opinion, she did not have a permanent injury because she was better the second time he saw her. He stated that he examines six to eight patients a day who have symptoms similar to Swinton's. He testified that they have problems related to age and most have never been involved in car accidents. He thought Swinton's previous condition was aggravated by the accident during the period of time she was symptomatic.
Dr. Stanley Kaplan, a chiropractic orthopedist, testified that he felt Swinton had suffered a permanent injury as a result of the accident. He testified that she had reached maximum improvement under his care, and he assigned her a 15% rating of which 10% was caused by the accident alone.
The Simmonses presented several doctors whose testimony conflicted with the medical evidence presented by the Swintons. Dr. Hoffman, a specialist in neurology, testified that he performed an independent medical examination of Swinton on 24 June 1994. He testified that her cranial nerves were normal, although she had a mild right-sided weakness or impairment of fine coordination of the right hand and tended to drag her right leg, consistent with her history of strokes. Her coordination was normal, her tests of sensation showed a decrease in the right side, and she had carpel tunnel syndrome. He did not think, however, that the accident caused the carpel tunnel syndrome because she had not had a wrist fracture. He thought aging caused the bulging disc and changes to the spine.
Hoffman was critical of Dr. Weiss' treatment. He believed that Dr. Weiss had ordered some tests for Swinton which were unnecessary. Further, he testified that Dr. Weiss had prescribed Dilantin for seizures which caused Swinton to have dizziness, confusion and headaches. Dilantin, he testified, is known for causing drowsiness, impairment of thinking, and difficulty with balancing and coordination. Because of the side effects, he noted, Swinton's prescription was changed to Felbatol. Dr. Hoffman also questioned Dr. Weiss' diagnosis of epilepsy since none of the EEGs showed seizure activity. He concluded that Swinton had probably suffered a mild cervical sprain in the accident but had no evidence of a residual problem; he believed the problems she did have were related to the two previous strokes and high blood pressure. He did not find objective evidence of a permanent injury resulting from the accident.
Dr. Theodotou, a neurosurgeon, testified that he had examined Swinton on January 18, 1994, and that her lack of symptoms did not appear consistent with a stroke in that he found no asymmetry in her reflexes. He also did a finger to nose test and found that Swinton had difficulty doing the test with her right arm. The balancing test for the eyes was normal, the range of motion of the neck was normal, and strength was excellent. He testified that Swinton presented a "confusing picture" and he felt that she was "consciously [embellishing] the examination based on the sensory exam." He did not believe she was a good candidate for surgery.
Dr. Michael Price, a neurologist, testified that he examined Swinton and found that she had a full range of motion in the neck, there was no muscle tenderness or guarding, her straight leg raising was normal, she had a normal mental status, she had no speech difficulty or confusion, her cranial nerves were normal, there was no jumping of the eyes, her pin prick test was normal, and the tuning fork test showed a diminution of sensation in the lower extremity. He concluded that Swinton may have had a mild sprain or strain at the time of the accident, but that there was no evidence that anything persisted, and that therefore she was not permanently injured. He concluded that, within a reasonable degree of medical probability, there was no objective evidence that Swinton had a medical problem resulting from the accident.
The jury returned a verdict finding that Swinton did not sustain a permanent injury within a reasonable degree of medical probability *373 and awarded $1,609.50 in damages. The Swintons moved for a new trial claiming defense counsel made improper comments during closing arguments. During the hearing on the motion for new trial, the Swintons' counsel argued that during closing arguments, defense counsel made personal comments on the evidence, expressed personal knowledge of facts not in evidence, and stated personal opinions. He argued that the most egregious comment was that Dr. Weiss negligently treated Swinton and had an ulterior motive in blaming her injuries on the accident, in that the injuries were actually caused by falls resulting from medication he had prescribed. Defense counsel responded that her comments were on matters in evidence, including the testimony that Swinton's medication made her dizzy and caused her to fall and injure herself on numerous occasions. Defense counsel further argued that no objections were made and any improper comments were not so extreme as to constitute fundamental error.
The Swintons argue that this court has held that closing arguments in which a lawyer expresses personal opinion breach Rule 4-3.4(e), Rules Regulating the Florida Bar, will not be condoned, and constitute fundamental error cognizable on appeal whether an objection is made or not. Superior Industries Int'l v. Faulk, 695 So.2d 376 (Fla. 5th DCA 1997); Silva v. Nightingale, 619 So.2d 4 (Fla. 5th DCA 1993). As a statement of this court's prior rulings, the Swintons are correct. In Schubert, for example, this court reversed the judgment because the "cumulative effect of the improper comments" warranted a new trial. We held that the remarks were fundamental error and that an objection was not necessary. Id. at 554. See also Stokes v. Wet `N Wild, 523 So.2d 181 (Fla. 5th DCA 1988) (holding that the combined effect of counsel's improper remarks warranted a new trial). In those cases, this court thoroughly reviewed the record and found numerous improper remarks. We determined that there was no support for the lawyers' closing comments; thus, the reversals.
This case differs significantly because the issue was Swinton's injury and whether it preexisted the accident. This called into question the reliability of her expert medical opinions. The nature of her injuries was contested, and conflicting medical testimony was presented. Further, during closing, the Simmonses' attorney argued matters and inferences that were supported by the evidence. Counsel for the Simmonses argued that the medical records and testimony indicated that Swinton had a history of medical problems predating the accident.
The Swintons argue that although no objections were made during closing, the order granting a new trial should not be reversed because the lawyer's comments undermine confidence in the judicial system. See Hagan; Wasden v. Seaboard Coast Line Railroad, 474 So.2d 825, 829 (Fla. 2d DCA 1985). Further, they argue, a contemporaneous objection is not necessary if the attorney's comments are so pervasive as to require a new trial. Silva; Stokes, 523 So.2d 181 (Fla. 5th DCA 1988). We cannot say the comments were improper since the attorney confined closing argument to the evidence presented and reasonable inferences that could be drawn from the evidence. Venning v. Roe, 616 So.2d 604 (Fla. 2d DCA 1993). The comments do not go to the foundation of the case, Hagan, and, absent an objection to allow the trial court to correct an alleged error, this court will not determine that the comments require reversal. See Rockman v. Barnes, 672 So.2d 890 (Fla. 1st DCA 1996). Moreover, the Swintons' attorney did not express personal opinions. Therefore, we cannot say that the comments plumbed the depths of impropriety. Borden, Inc. v. Young, 479 So.2d 850 (Fla. 3d DCA 1985).
We also note with displeasure the growing use as a trial tactic the failure to object to improper or inappropriate closing arguments. See e.g. Baptist Hosp. v. Rawson, 674 So.2d 777 (Fla. 1st DCA 1996). Here, the Swintons' lawyer admitted that he did not object to the closing in order to preserve the error for appellate review. Akin v. State, 86 Fla. 564, 98 So. 609 (Fla.1923). Yet on appeal, the Swintons' attorney argues that the comments were egregious. We assume they were just as egregious when first uttered as when transcribed. The better tactic is to *374 object when the comments are made and allow the trial court to correct the offending counsel's behavior. D'Auria v. Allstate Ins. Co., 673 So.2d 147 (Fla. 5th DCA 1996); Bellsouth Human Resources Administration, Inc., v. Colatarci, 641 So.2d 427 (Fla. 4th DCA 1994). We reverse and remand with instructions to reinstate the verdict.
REVERSED and REMANDED with instructions.
GRIFFIN, C.J., and COBB, J., concur.