VAN NORTWICK, J.
This is the second appearance of this medical malpractice case in this court. In the parties’ first appearance, a favorable verdict for the plaintiff, Malcolm Keith Rawson, appellee/cross-appellant here, was reversed as a result of the improper and inflammatory closing argument presented by counsel for Rawson. Baptist Hosp., Inc. v. Rawson, 674 So.2d 777 (Fla. 1st DCA), rev. denied, 682 So.2d 1100 (Fla. 1996). On retrial, the jury returned a verdict in favor of the defendant, Baptist Hospital, Inc. (Baptist), appellant/cross-ap-pellee here. Upon Rawson’s motion, the trial court granted a new trial based upon the prejudice to Rawson caused by the surprise testimony of a defense witness, Dr. Arthur Dick, which had been presented at trial in violation of the pretrial discovery order. Baptist appeals the order granting new trial and the failure of the trial court to allow an allocation of fault on the jury verdict form. Rawson has cross-appealed raising several issues. We affirm on all issues and write only to address the issues relating to Baptist’s discovery violation. Upon a complete review of the record, we hold that the trial court did not abuse its discretion in granting a new trial. The trial court’s detailed and well-reasoned order is supported by the facts and the case law. Binger v. King Pest Control, 401 So.2d 1310 (Fla.1981); Garcia v. Emerson Elec. Co., 677 So.2d 20 (Fla. 3d DCA 1996); Grau v. Branham, 626 So.2d 1059 (Fla. 4th DCA 1993); Office Depot, Inc. v. Miller, 584 So.2d 587 (Fla. 4th DCA 1991).
Rawson was scuba diving with friends in the Gulf of Mexico offshore from Pensacola when, following a rapid ascent, he surfaced with symptoms of decompression illness, commonly known as the “bends.” He was not administered oxygen for approximately 45 minutes or treated in a hyperbaric chamber for five and one-half hours. As a result of the decompression illness, Raw-son suffered permanent spinal cord damage and paralysis from the mid-chest level down. Rawson filed suit, contending that Baptist; Life Flight, Baptist’s helicopter emergency medical transportation service; and Baptist employees, Drs. Lohstreter and Slevenski, negligently delayed his transport to a hyperbaric chamber and failed to properly transport him causing his permanent injuries.
Shortly before the second trial, and in clear violation of the trial court’s pretrial discovery order, Baptist named Dr. Dick as an expert rebuttal witness on the issue of the impact of the use of alcohol on scuba divers. Rawson immediately moved to strike arguing surprise and prejudice.[1] The trial court reserved ruling on the motion to strike until Dr. Dick’s deposition had been taken. At that deposition, contrary to prior representations to the trial court by defense counsel, it became clear that Dr. Dick was being offered as a defense expert on all causation issues. At his deposition, Dr. Dick gave testimony on various types of decompression illness. Significantly, however, at the deposition Dr. Dick never offered the opinion, central to his later trial testimony, that, when Rawson ascended too quickly from his dive, the arterial flow to his spinal cord *1159 was blocked by nitrogen bubbles causing apoptosis, which was described by Dr. Dick as preprogrammed cell death or a “suicide cell” routine.[2] At trial, it was Baptist’s contention that, if Rawson’s condition was caused by apoptosis, irreversible damage to his spinal cord would have occurred at the time he ascended and was not immediately administered oxygen. Under this theory of causation, Rawson’s condition could not have been avoided or improved by later treatment in a hyper-baric chamber. Dr. Dick’s testimony at trial was the first time in the proceedings that any of the numerous medical experts had opined that Rawson’s condition had been caused by apoptosis.
In the order on appeal, the trial court gives the following explanation of the events which prompted the granting of a new trial:
Further arguments regarding the use of Dr. Arthur Dick [were] addressed by the Court on October 10, 1997, ten days prior to the trial of this action. On that date the defendant indicated the' intention to utilize Dr. Dick as one of their primary expert witnesses in lieu of other witnesses previously listed. The Court, in an effort to ensure that there was no undue prejudice to the plaintiff, inquired as to whether or not Dr. Dick’s testimony was any different from those experts previously listed. The Court was assured that Dr. Dick’s testimony was the same as witnesses previously listed. Further, the Court inquired as to what efforts were being made by the plaintiff to prepare to counter the testimony of Dr. Dick so as to not be prejudiced in the presentation of their case. At that juncture, the plaintiff was still in the process of arranging for the testimony of a rebuttal expert in the form of a neurologist, Dr. Massey. The plaintiff at that time advised the Court of the difficulty being incurred arranging for Dr. Massey to review all of the records associated with the case. The Court directed plaintiffs counsel to continue with their efforts, but indicated that it would allow Dr. Dick to testify as long as his opinions were not new and/or different from the other experts. The Court, in attempting to apply the principles of Binger v. King Pest Control, 401 So.2d 1310 (Fla.1981), made extraordinary efforts in order to ensure that the defendant would be allowed to present the expert witness of its choice. However, in accommodating the defendant, the Court finds it has allowed unfair surprise and prejudice to occur to the plaintiff which can only be remedied by the granting of a new trial....
After reviewing the deposition of Dr. Dick and having heard the trial testimony of Dr. Dick, it has become clear to this Court that Dr. Dick’s testimony was a work in progress up to the point in time that he testified at trial. Although the germ of his opinion existed, it is clear that he refined and developed his opinion to the point that the medical/scientific concept of “apoptosis” became a central and critical feature of his testimony. This becomes even more obvious upon review of Dr. Dick’s billing records which reflect that the vast amount of his time attributed to research in this case occurred subsequent to his deposition. As [counsel for Baptist] candidly admitted] during his oral argument on the Motion For New Trial, he had never heard the term apoptosis prior to the *1160 middle of the trial. Plaintiffs counsel first heard the term during the cross-examination of Dr. Massey at the videotaped deposition prepared for rebuttal of Dr. Dick’s direct testimony. The Court must agree with the plaintiff that because Dr. Massey had just recently been retained prior to trial and had many records to review and because the medical/scientific concept of apoptosis had never been revealed to the plaintiff as a significant factor involved in the opinion of Dr. Dick, neither Dr. Massey nor plaintiffs counsel were prepared to address this issue during the course of the trial. Dr. Massey appeared to be surprised by the use of the word and clearly was not able to address its application to the issues involved with the case. Clearly, if the plaintiffs attorneys and Dr. Massey had been exposed to the full context of the use of this term by Dr. Dick, each would have been in a better position to address its applicability in the case of diving accidents and the validity of Dr. Dick’s opinions in that regard. The Court finds that the processes involved with the causation of the medical condition of the plaintiff are not only complex scientifically and medically but are to some degree mysterious, not only to the lawyers and the Court, but also to the physicians involved.[3] As defense counsel argued in its closing argument to the jury, it was only through Dr. Dick that the plaintiff has finally received an explanation for what happened to him. The problem is that the explanation that has been received has been received in a manner whereby the plaintiff was prejudiced in his ability to rebut the explanation....
We commend the trial court’s efforts to manage this complex and contentious litigation. The trial court labored to assure that the two-week trial could proceed with Baptist presenting the expert witness of its choice, notwithstanding the violations of the pretrial discovery order. Ultimately, however, the trial court correctly concluded that, despite its efforts, the surprise testimony of Dr. Dick worked such a prejudice on Rawson that a new trial was required. As the Second District has noted, “litigation should no longer proceed as a game of ‘blindman’s bluff.’ ” Jones v. Seaboard Coast Line Railroad Co., 297 So.2d 861, 863 (Fla. 2d DCA 1974).
Like the trial court, we find similarities between the instant case and Garcia v. Emerson Elec. Co., 677 So.2d 20 (Fla. 3d DCA 1996) and believe that the Garcia court’s concluding observations are particularly apropos here:
Thus we must remand this case for a third trial. We note in passing that neither side has exactly covered itself in glory with its behavior during the course of this long and protracted litigation. Perhaps the third time will indeed be the charm.
Id. at 21.
Upon remand, Baptist is not precluded from timely seeking to amend its complaint to add a claim alleging negligence by the United States Coast Guard.
AFFIRMED.
ERVIN AND BROWNING, JJ., CONCUR.

. Rawson continued to object up to and after Dr. Dick’s testimony.

. As explained in Baptist's brief, it was Dr. Dick's opinion that
The fatty area of the spinal cord takes up a lot of nitrogen. If the arteries supplying blood to the spinal cord becomes blocked, an area of the spinal cord is deprived of oxygen due to decreased blood flow. Without oxygen to the spinal cord, nerve cells idle; when they receive oxygen the neurons can fire up again. If the nerve cells are without oxygen for 10-15 minutes, they may fire back up, but ultimately trigger their own suicide routines, a process known as preprogrammed cell death or apoptosis. Symptoms may come and go, but the process is irreversible.
(Appellant's Initial Brief, pg. 15).

. The record reflects that no party challenged the admissibility of any of the expert medical testimony under the general acceptance test set forth in Frye v. United States, 293 F. 1013 (D.C.Cir.1923), as adopted in Florida. See Ramirez v. State, 651 So.2d 1164 (Fla.1995); Hadden v. Stale, 690 So.2d 573, 578 (Fla. 1997); Brim v. State, 695 So.2d 268, 271 (Fla.1997); Berry v. CSX Transp., Inc., 709 So.2d 552 (Fla. 1st DCA), rev. denied, 718 So.2d 167 (Fla.1998); E.I. Du Pont De Nemours & Co., Inc. v. Castillo, 24 Fla. L. Weekly D448, - So.2d -- (Fla. 3d DCA Feb. 17, 1999).