719 So.2d 355 (1998)
WALSDORF SHEET METAL WORKS, INC. and Humana Workers' Compensation Services (f/k/a PCA Solutions, Inc.), Appellants,
v.
Angel GONZALEZ, Appellee.
No. 97-3369.
District Court of Appeal of Florida, First District.
October 21, 1998.
William E. Lawton and Lamar D. Oxford of Dean, Ringers, Morgan & Lawton, P.A., Orlando, for Appellants.
Susan W. Fox of Macfarlane, Ferguson & McMullen, Tampa; Bradley Guy Smith of Smith & Feddeler, P.A., Lakeland, for Appellee.
VAN NORTWICK, Judge.
Walsdorf Sheet Metal Works, Inc. and Humana Workers' Compensation Services *356 (jointly the employer/carrier) appeal an order of the Judge of Compensation Claims (JCC) determining that the industrial accident, not an underlying congenital defect, was the major contributing cause of the injuries and disability suffered by the claimant, Angel Gonzalez. We affirm all issues raised on appeal and write only to address the employer/carrier's contention that the JCC erred in failing to rule on their request for an appointment of an expert medical advisor pursuant to section 440.13(9)(c), Florida Statutes (1995). We conclude that there was no error because the employer/carrier's request for appointment of an expert medical advisor was untimely.
Claimant suffers two related congenital defectsArnold Chiari malformation and syringomyelia. Syringomyelia is marked by a syrinx, which is a fluid-filled cavity within the spinal cord, literally shaped like a syringe. On August 17, 1995, claimant, a roof construction laborer, was removing roofing materials and throwing debris into a nearby truck when he experienced an electrical shock sensation and a sudden radiating pain down the side of his left arm. Claimant contends that his accident caused the syrinx to enlarge causing him to suffer radiculopathy and numbness which in turn caused his inability to work, and his need for surgery.
Claimant was seen by several physicians who gave differing opinions on the causal relationship between his condition and the industrial accident. Pertinent to this appeal, Dr. Mozingo testified in his deposition on November 25, 1996, that based upon a reasonable medical probability the claimant's symptoms were not causally related to his industrial accident but to his congenital defects. Similarly, although his deposition was more equivocal, Dr. Cuervo testified that claimant's symptoms were the natural progression of his preexisting congenital malformations. On the other hand, Dr. Martinez opined in his medical report of October 29, 1996, that claimant's congenital condition was asymptomatic before the industrial accident and his symptoms were aggravated by the work-related accident of August 17, 1995. The January 6, 1997 pretrial stipulation lists these doctors as witnesses and recites the employer/carrier's position that the major contributing cause of claimant's present condition is his preexisting congenital defects which were unrelated to the industrial accident.[1]
At the April 9, 1997 final hearing, Dr. Martinez testified, but, for reasons unknown to this court, part of his testimony was not transcribed, including all of his direct examination. When his available testimony is considered in its entirety, it is clear from the record that it was his opinion that claimant's industrial accident was the major contributing cause of an aggravation of his preexisting condition and the necessity for surgery. The depositions of Drs. Mozingo and Cuervo, among others, were introduced. At the conclusion of the hearing, and after final argument, counsel for the employer/carrier, stating that there appeared to be "conflicting medical evidence," moved for the appointment of an expert medical advisor pursuant to section 440.13(9)(c), Florida Statutes (1995).
Section 440.13(9)(c) provides in pertinent part:
If there is disagreement in the opinions of the health care providers, if two health care providers disagree on medical evidence supporting the employee's complaints or the need for additional medical treatment, or if two health care providers disagree that the employee is able to return to work, the division may, and the judge of compensation claims shall, upon his own motion or within 15 days after receipt of a written request by either the injured employee, the employer, or the carrier, order the injured employee to be evaluated by an expert medical advisor. The opinion of the expert medical advisor is presumed to be correct unless there is clear and convincing evidence to the contrary as determined by the judge of compensation claims.
*357 In Palm Springs General Hosp. v. Cabrera, 698 So.2d 1352, 1356 (Fla. 1st DCA 1997), this court explained that "[t]he requirements of section 440.13(9)(c), Florida Statutes (1995), are mandatory and binding on the judge of compensation claims." Nonetheless, the Cabrera court also recognized the importance of a timely request for the appointment of an emergency medical advisor, as follows:
While the statute contains no provisions governing the timeliness of requests for appointment of expert medical advisors, the absence of statutory deadlines does not authorize unreasonable delays in requests for evaluation by expert medical advisors once material disagreement in the opinions of health care providers comes to a party's attention.
Id. at 1354.
In Cabrera, the employer and its servicing agent requested the appointment of an expert medical advisor shortly before the final hearing. The motion alleged that the differences in the opinions of the health care providers had only recently come to light. The judge of compensation claims reserved ruling on the motion until evidence was taken at the merits hearing. The merits of the case were heard at several hearings spanning the next several months, during which medical evidence was being adduced. Several more months passed before the judge of compensation claims entered an order determining that the motion for expert medical advisor was untimely filed. Under those facts, this court reversed, ruling that the request had been made with reasonable promptness after the disagreement between health care providers had surfaced. Id. at 1354.
Unlike Cabrera, here the motion for the appointment of an expert medical advisor in this case was not made with reasonable timeliness. From the medical reports and depositions, the record reflects that the disagreement among the health care providers was known more than five months before the final hearing. Certainly, the conflicting opinions of the various health care providers were well known at the time the JCC accepted the pretrial stipulation approximately four months before the final hearing.[2]
One of the primary purposes of the pretrial conference is to simplify issues for trial. See generally Cooke v. Insurance Co. of North Am., 652 So.2d 1154, 1156 (Fla. 2d DCA 1995). In addition to identifying the issues, the pretrial stipulation requires the parties to furnish the names of all witnesses and submit the written reports of expert witnesses giving the substance of the expert opinion. See rule 4.045(h)(4) and (5), Fla. R. Work. Comp. P. More importantly, the rule provides that at this point the parties should consider and determine the matters which would aid in the disposition of the case. Rule 4.045(h)(7), Fla. R. Work. Comp. P. Thus, when disagreement among the expert medical witnesses is clearly evident, as in the instant case, under rule 4.045(h)(4) the party desiring the appointment of an expert medical advisor should indicate the request for an expert medical advisor in the pretrial stipulation and under rule 4.045(h)(7) the parties and the JCC are required to address the appointment of an expert medical advisor at the pretrial conference. Construction of rule 4.045 in this manner facilitates the orderly and efficient administration of justice fairly to all parties. We do not construe section 440.13(9)(c) as allowing a party to disrupt the orderly and efficient trial of a worker's compensation case by waiting until the end of the final hearing to request an expert medical advisor, when the conflict in the medical opinions was known well in advance of the pretrial conference.[3]
*358 Discovery in a worker's compensation case is to proceed in the same manner and for the same purpose as provided in the Florida Rules of Civil Procedure. Rule 4.055(b), Fla. R. Work. Comp. P. In that regard, it has long been understood that except under extraordinary circumstances, lawyers trying civil cases have a right to expect that once trial commences, discovery and medical examinations will cease. See Grau v. Branham, 626 So.2d 1059, 1061 (Fla. 4th DCA 1993). Certainly, allowing a party to delay seeking an emergency medical advisor until trial, when disagreement in the medical opinions is evident earlier, would not facilitate the legislative intent of the worker's compensation law "to ensure the prompt delivery of benefits to the injured worker." § 440.015, Fla. Stat. (1995).
AFFIRMED.
BENTON and PADOVANO, JJ., concur.
NOTES
[1] The pretrial stipulation indicates that Dr. Martinez gave a deposition which was to be introduced at the final hearing. The record on appeal, however, contains only Dr. Martinez's medical report.
[2] Below, the JCC denied the employer/carrier's belated motion for appointment of an emergency medical advisor not on the grounds of untimeliness, but because "I think there's enough evidence here to make a decision without [an emergency medical advisor]." This is not an appropriate basis for denial. See Cabrera, 698 So.2d at 1356. Nevertheless, a lower tribunal should be affirmed if the result is correct, even if the lower tribunal applied an incorrect legal theory. Holland v. Holland, 458 So.2d 81, 85 n. 3 (Fla. 5th DCA 1984).
[3] The appellants do not argue, and we do not address, whether the JCC had a duty to appoint an expert medical advisor on his own motion in the instant case. See § 440.13(9)(c), Fla. Stat. (1995).