PER CURIAM.
In this workers’ compensation case, Claimant appeals an order of the Judge of Compensation Claims (JCC) denying his claims for additional impairment benefits (IBs) based on the JCC’s accepting one doctor’s opinion over another doctor’s disagreeing opinion as to the correct permanent impairment rating (PIR). To resolve the disagreement, Claimant argues the JCC should instead have appointed an expert medical advisor (EMA). But the JCC denied Claimant’s motion for an EMA for two reasons: it was untimely, and no disagreement existed because one opinion had an insufficient foundation. We re *63 verse the order and remand for appointment of an EMA, for the reasons that follow.
Development of the disagreement
In March 2013, Dr. Burkart placed Claimant at maximum medical improvement (MMI) and assigned a 50% PIR; one month later he changed his opinion to a 20% PIR without explanation. Claimant was apparently unaware of the change in PIR until his IB payments stopped the next year. In June 2014, Claimant obtained a “records review” independent medical examination (IME) with Dr. Bor-zak; Dr, Borzak did not speak to or see Claimant, but merely reviewed medical records, including Dr. Burkart’s PIR opinions. Dr. Borzak assigned a 42% PIR.
Sufficiency of Dr. Borzak’s opinion.
The Employer/Carrier (E/C) asserted that Dr. Borzak’s opinion was insufficient to create a disagreement because it was based on only a records review, and an incomplete one at that. The JCC agreed, relying on the authority the E/C cited, Dawson v. Clerk of Circuit Court—Hillsborough, 991 So.2d 407 (Fla. 1st DCA 2008). But Dawson envisions a case-specific inquiry as to whether a doctor’s opinions constitute competent substantial evidence (CSE) to create a' disagreement. Id. at 411 (noting Dr. Greene’s opinions about shoulder were not CSE because he did not examine claimant’s shoulder or review medical records pertaining thereto and was not authorized to treat shoulder).
Dr. Borzak’s opinion here constitutes CSE because it has a solid foundation. Even though it was by paper review only, nothing in the definition of “independent medical examination” precludes a records review IME. See § 440.13(l)(j), Fla. Stat. (2011).[1] And even though Dr. Borzak did not review the two most, recent medical notes from, Dr. Burkart, that does not make his review “incomplete” on these facts because those two post-MMI notes do not bear on an assessment of PIR, which must be assigned at the date of MMI.
Timeliness of EMA request
The EMA statute- does not set a deadline for EMA requests. § 440.13(9)(c), Fla. Stat. (2011).[2] The only deadline is found in case law: EMA requests should not be .“unreasonably delayed” once the party is aware of the disagreement, Palm Springs Gen. Hosp. v. Cabrera, 698 So.2d 1352, 1354 (Fla. 1st DCA 1997), but made with “reasonable promptness,” AT & T Wireless v. Frazier, 871 So.2d 939, 940 (Fla. 1st DCA 2004) (quoted in Romero v. JB Painting & Waterproofing, Inc., 38 So.3d 836; 838 (Fla. 1st DCA 2010)).
But a request is not the only way to bring the need for an EMA to a JCC’s attention. This is a result of á peculiarity in EMA law; even though a JCC’s statutory duty to appoint an EMA in proper circumstances is mandatory, see Brown v. Vanguard Sec., 7 So.3d 572, 573 (Fla. 1st DCA 2009),-a JCC’s failure to sua sponte *64 appoint an EMA is not fundamental error and, thus, such error must be preserved for review. See Quiroga v. First Baptist Church at Weston, 124 So.3d 936 (Fla. 1st DCA 2013). A party that requests an EMA must pay for it; in contrast, when a JCC sua sponte appoints an EMA, the cost falls on the E/C. § 440.13(9)(f), Fla. Stat. (2011). Accordingly, a claimant, to preserve his appellate rights, may give notice of the need for an EMA without actually requesting an EMA by motion (or incurring the cost), thus either ensuring appointment of an EMA or preserving the error. Banuchi v. Dep’t of Corr., 122 So.3d 999, 1001 (Fla. 1st DCA 2013).
Here, Claimant' gave the JCC two “Ban-uchi notices” before filing a motion requesting an EMA. Moreover, other timing issues in the proceedings below made it such that Claimant’s notices and motion were not unreasonably delayed. Specifically, although a disagreement as to the PIR existed as of June 2014, and Claimant was aware of it by the time he signed the pretrial stipulation in October 2014 (on which Claimant expressly indicated the existence of the conflict), Dr. Burkart did not explain the reason for his change in PIR until deposed on December 5, 2014. Claimant filed a first Banuchi notice six days later (32 days before the originally scheduled date of final. hearing), and a second Banuchi notice on January 6, 2015 (five days before the originally scheduled date of final hearing). Adding a layer of complexity, Dr. Borzak’s deposition was temporarily excluded from evidence by order of February 10, 2015, which was struck February 24, 2015. Finally, Claimant filed his motion requesting an EMA only ten days later, on March 6, 2015 (five days before the rescheduled, final hearing took place — and possibly also before the final hearing date was set).
The first Banuchi notice cured any timeliness problem in the instant case because the purpose of an EMA request is not to give the opposing litigant notice, but to inform the JCC of her mandatory duty early enough not to disrupt orderly proceedings. See Quiroga, 124 So.3d at 938 (“The need for predictable and orderly proceedings (removing incentives for a party to wait until after the outcome of the case is decided before insisting on the appointment of an EMA) is the very reason why this court has consistently held that an EMA must be requested timely by the party seeking such relief on appeal.”). This is why the cases on reasonable delay address, not just the time since learning of the disagreement, but also the time before the final hearing. See Cabrera, 698 So.2d at 1353-54 (timely at five days after awareness of disagreement); Romero, 38 So.3d at 837-39 (timely at seven weeks when made the day of the expedited hearing); WalsdoTf Sheet Metal Works, Inc. v. Gonzalez, 719 So.2d 355 (Fla. 1st DCA 1998) (untimely at five months when requested at close of final hearing); W.S. Badcock Corp. v. Knight, 720 So.2d 619 (Fla. 1st DCA 1998) (untimely at nine months when requested two days before final hearing); Arvida River Hills Country Club v. Van Slyke, 728 So.2d 1213, 1214 (Fla. 1st DCA 1999) (untimely when requested nine days after rendition of order awarding compensation, where all medical testimony was adduced in pretrial depositions). In the instant case, the first Banuchi notice was filed, not only 32 days before the original date of final hearing, but three full months before the final hearing actually took place.
Conclusion
Under the facts of the instant case, Claimant’s EMA request was timely, and the disagreement required an EMA; con *65 sequently, the-JCC erred in not appointing an EMA.
REVERSED and REMANDED for further proceedings in accordance with this opinion.
ROWE, RAY, and SWANSON, JJ, concur.

. " ‘Independent medical examination’ means an objective evaluation for the injured employee’s medical condition, including, but not limited to, impairment or work status, performed by a physician or an [EMA] at the request of a party, a [JCC], or the department to assist in the resolution of a dispute arising under this chapter.”

. “If there is disagreement in the opinions'of ■ the health care providers, ,.. the department may, and the [JCC] shall, upon his or her own motion or within 15 days after receipt of a written request by either the 'injured employee, the éniployer, !or the carrier, order the injured employee to be evaluated by an [EMA]. The opinion of the .[EMA] is presumed to be correct unless there is clear and con-vincinjg evidence to the contrary as determined by the [JCC].” ' •