626 So.2d 1059 (1993)
Gerard D. GRAU, M.D., Gerard D. Grau, M.D., P.A., Appellants,
v.
Stanley B. BRANHAM, Appellee.
No. 92-2320.
District Court of Appeal of Florida, Fourth District.
November 10, 1993.
Rehearing Denied December 9, 1993.
Philip D. Parrish of Stephens, Lynn, Klein & McNicholas, P.A., Miami, for appellants.
Joel S. Perwin of Podhurst, Orseck, Josefsberg, Eaton, Meadow, Olin & Perwin, P.A., Miami, and Sheldon J. Schlesinger, P.A., Fort Lauderdale, for appellee.
WARNER, Judge.
Although we thought it was generally accepted that civil trials are not to be ambushes for one side or another, see Binger v. King Pest Control, 401 So.2d 1310 (Fla. 1981), we are confronted here by such tactics used by the plaintiff to the prejudice of the defense. In this case not one but two expert physicians examined the plaintiff for the first time during trial and, over the strenuous objections of the defense, were allowed to testify regarding their opinions formed as a result of those examinations.[1] The examinations were in contravention of several orders of the trial court regarding discovery cutoffs as well as the spirit of the rules of civil procedure. We hold that the trial court abused its discretion in allowing these experts to testify regarding their examinations of the plaintiff/appellee.
The trial court's pretrial order of January 1992 in this medical malpractice case required that "Discovery must be completed no later than 10 days before the beginning of the trial period absent agreement of counsel or order of the Court." Experts were required to be disclosed 60 days before trial. *1060 In compliance with the order, both parties filed their lists of expert witnesses. The defense filed a motion to limit plaintiff's experts to one in each field because of the substantial cost. While that motion was denied, the trial court ordered that the plaintiff had to produce the experts he intended to call in Fort Lauderdale for deposition the week before trial. Then in response to the plaintiff's motion for relief from that order, the court limited the parties to one expert per specialty and specifically provided:
That the depositions of said expert witnesses may be taken by telephone; and if any of the expert witnesses whose depositions are so taken have a different opinion predicated upon something that he's done prior to the commencement of trial, that expert witness shall be made available for an updated deposition prior to going on the witness stand. [Emphasis supplied.]
The plaintiff filed a "Notice of Compliance with Court Order" which stated that he "hereby limits the expert witnesses they intend to call to the trial of this cause of action as follows" and listed five experts. The next day he filed an emergency motion for substitution of one of the doctors on the list which was granted. The substituted doctor was a Dr. Louis Dyll. Dr. Yvon Silva, who was listed on the first list of experts filed sixty days before trial, was not listed on the Notice of Compliance. Dr. Dyll's deposition was taken prior to trial. At the time of the deposition he had not examined the plaintiff. Dr. Silva's deposition had been taken much earlier, at which time he had not examined the plaintiff either.
Trial was commenced in the beginning of May. On the third day of trial, Dr. Dyll took the stand and began to testify. When the plaintiff's attorney asked him whether he had examined the plaintiff at the attorney's request and answered that he had, the defendant immediately asked for a side-bar. Much to defense counsel's surprise, he found out that the doctor had examined the plaintiff that very morning in the doctor's hotel room. As a result of the examination, the doctor's opinions had changed. The trial court found that the defendant was prejudiced and allowed defense counsel to take the deposition of the doctor, which revealed the change of opinion. The trial court also allowed him to talk to the plaintiff's original treating physician as a cure to the prejudice. However, we find from the entire record that it was defendant's position throughout that nothing could really cure the prejudice of this mid-trial surprise. While acknowledging the prejudice to the defendant, the trial court seemed to be of the impression that it would be error to exclude the testimony of the doctor regarding the examination and, not wishing to declare a mistrial with so much trial time already invested, it was incumbent on the defendant to cure the prejudice by engaging in mid-trial discovery.
After succeeding in having Dr. Dyll testify to his mid-trial examination of the plaintiff, the plaintiff's attorney allowed Dr. Silva to examine the plaintiff over a weekend break. When Dr. Silva was called to testify the defendant again objected, both to the mid-trial discovery and to permitting the plaintiff to call Dr. Silva at all, given his exclusion on plaintiff's Notice of Compliance filed prior to the commencement of trial. While calling it "in bad faith or tricky ... trick or treat it was, I guess," the court nevertheless believed that a lunchtime deposition was all that was needed to cure the prejudice and allowed the doctor to testify. Like Dr. Dyll, the results of the examination changed Dr. Silva's pre-examination deposition testimony. After the presentation of all the evidence the jury rendered a verdict in favor of the plaintiff.
While the trial court does have broad discretion in sorting through witness disclosure and discovery problems, see Binger, there are limits, and we think one has been surpassed in this case. The trial court not only allowed the plaintiff to disobey its clear pretrial orders, but it appeared more concerned with the prejudice to the plaintiff in disallowing the testimony of these witnesses, than with the prejudice to the defendant in striking their testimony regarding the trial examinations.
The first order of the trial court required all discovery to be completed at least ten days prior to trial. While subsequent orders modified both the witnesses to be *1061 presented and the time for discovery to be completed, the last order clearly stated that updated depositions would be allowed of experts who did something which changed their opinion prior to the commencement of trial. Clearly, except under extraordinary circumstances which do not exist here, the lawyers have a right to expect that once a trial commences, discovery and examinations must cease. The lawyers who make the opening statement must have a reasonably firm idea of what the evidence will show. Liberal rules of discovery assure this. Once the trial starts the lawyers are engaged in the unfolding of the evidence they have already collected. That is why there are discovery cutoffs. All the discovery rules and the extensive efforts of parties to discover the other party's case would be for naught if one side were able to wait until after the trial started to establish key pieces of evidence such as what occurred in this case. While Dr. Dyll's deposition was taken before trial, he had not examined the plaintiff and his testimony therefore could not have been based upon personal observation of the plaintiff. However, almost the entire substance of his testimony at trial was based upon his morning examination and conversation with the plaintiff. The trial court should not have allowed such "trickery," as the trial court described it.
Even more egregious was the attempt to use Dr. Silva and his mid-trial examination of the plaintiff. Not only had the plaintiff filed a notice limiting his experts and excluding Dr. Silva, but his opinions expressed at trial regarding the deviation from the standard of care were bolstered by his weekend examination and conference with the plaintiff. Again, the trial court thought that prejudice could be cured simply by allowing the defense to take the deposition of the doctor, but that is a far too narrow view of the prejudice involved. It is not enough that the defendant simply know what a witness may say before he testifies. Prejudice also exists by the fact that appellant is unable to counter the offered testimony. For instance, in this case the defense's doctor expert had testified by videotape and was out of town during the trial period, and when the plaintiff's expert's testimony changed based upon the mid-trial examination, the defense was unable to mount an adequate response to these new circumstances. Furthermore, we strongly feel that once the trial starts the parties' attorneys should be allowed to concentrate on the presentation of the evidence at hand. Neither side should be required to engage in frantic discovery to avoid being prejudiced by the intentional tactics of the other party.
Binger certainly does not require the trial court to admit this testimony. Binger dealt with the failure to disclose a witness, although its teachings have been applied where the presentation of a changed opinion is tantamount to permitting an undisclosed adverse witness to testify. See Office Depot, Inc. v. Miller, 584 So.2d 587 (Fla. 4th DCA 1991). Using a Binger analysis on this case, see Binger at 1314, we find that the defendant was surprised in fact by the changed testimony of the two doctors. Further, while the depositions of the experts regarding their mid-trial examinations allowed the defendants to know what they would testify when asked in trial, they did not allow the defendants to counter such testimony with sufficient expert testimony of their own. In addition, the trial court specifically found that the plaintiff's tactics were intentional tricks. They were in bad faith noncompliance with pretrial orders limiting discovery and witnesses. And finally, they caused a substantial disruption in the orderly and efficient trial of the case.
This case is most closely analogous to Colonnell v. Mitchels, 317 So.2d 799 (Fla. 2d DCA 1975). In that case a treating physician performed an updated physical examination of the plaintiff after the discovery cutoff. Over the objection of the defendant, the physician was allowed to testify regarding this examination. On appeal, the court held that the trial court abused its discretion in allowing the physician to testify with regard to the updated examination. Writing for the court Judge (now Justice) Grimes stated:
We believe the court abused its discretion in permitting the doctor to testify concerning the September 10 examination. The court strictly followed the terms of the pretrial order with respect to the defendants' supplemental interrogations, yet allowed the plaintiffs to introduce damaging evidence obtained in direct violation of the same order. The defendants were confronted *1062 with the new x-rays taken at that examination which they had never seen and which were admitted into evidence in spite of the fact that all exhibits were supposed to have been presented at the pretrial conference. Even the additional medical expenses incurred because of the examination were allowed into evidence. The purpose of requiring that physical examinations and discovery be completed by the time of the pretrial conference (which was set only twelve days prior to the week of the trial) was to avoid surprise to either side. As we said in Jones v. Seaboard Coast Line Railroad Company, Fla.App.2d 1974, 297 So.2d 861, "litigation should no longer proceed as a game of `blind man's bluff.'"
Id. at 801. See also Office Depot at 590.
Certainly, if prejudice can be cured efficiently, then it should. But the plaintiff takes his own risk in adopting an ambush strategy and should not profit from his own wrongdoing. At oral argument, appellee argued that if the plaintiff's attorney was wrong in his strategy, then the wrongs committed by the attorney should not be visited on the innocent plaintiff. That is inapplicable here. The wrongs of the attorney should not harm the innocent defendant who in good faith engaged in discovery and conducted the trial by the rules.
Reversed and remanded for a new trial.
GUNTHER and FARMER, JJ., concur.
NOTES
[1] This is not the first time this particular firm has attempted to utilize mid-trial examinations. See Wilkes v. Colongelo, 581 So.2d 176 (Fla. 4th DCA 1991).