675 So.2d 241 (1996)
DEPARTMENT OF HEALTH AND REHABILITATIVE SERVICES, Appellant,
v.
J.B., a minor, By and Through Lorna SPIVAK, Guardian Ad Litem, et al., Appellee.
No. 93-3193.
District Court of Appeal of Florida, Fourth District.
June 19, 1996.
Bartley C. Miller and Wendy Lynn Henshaw of Panza, Maurer, Maynard & Neel, P.A., Fort Lauderdale, for appellant.
Joel S. Perwin of Podhurst, Orseck, Josefsberg, Eaton, Meadow, Olin & Perwin, P.A., Miami, and Sheldon J. Schlesinger, P.A., Fort Lauderdale, for appellee.

*242 ON MOTION FOR CLARIFICATION
SHAHOOD, Judge.
Appellant and appellee have filed motions for clarification. We grant both motions for clarification, withdraw our prior opinion, and substitute the following revised opinion.
Appellant, Department of Health and Rehabilitative Services (HRS), appeals an adverse jury verdict of $14,500,000.00 for negligence in its investigation of child abuse upon the appellee, J.B., a minor. HRS raises five issues on appeal, one of which requires reversal. The remaining issues are rendered moot by virtue of our decision.
In 1989, J.B., a minor, by and through his guardian ad litem, sued HRS for negligence in failing to conduct a proper child abuse investigation in 1985. Discovery began in July 1989 and ended by order of court in July 1993. A pretrial conference was held on July 29, 1993, and discovery was closed as of that day. The three-week trial commenced on August 26, 1993, and was fraught with bickering over discovery issues from the first day. It is the trial court's rulings on several of these discovery matters which we are asked to review.
The first violation concerns the testimony of appellee's economist, Dr. John Burke, whom HRS had deposed on July 1, 1993, one month prior to trial. At the deposition, Dr. Burke testified as follows:
[Counsel for HRS]: Were you asked to do anything about life care plans?
Dr. Burke: I received no instruction on that.
[Counsel for HRS]: You have not been asked to form opinions as to the cost of his [appellee's] medical care in the future?
Dr. Burke: I have not been asked to do that.
Based on that testimony, HRS filed a motion in limine seeking to preclude Dr. Burke from testifying about a life care plan. On August 13, 1993, at the hearing on the motion, the following discussion took place:
[Counsel for HRS]: The next motion is the second motion in limine and this is with regard to Doctor John Berk [sic] who is their economist. Doctor Berk's [sic] deposition was taken July 1st of this year and Doctor Berk [sic] at that time did not have a life plan that doctor Clark [sic], their rehab doctor in Louisiana
Court: When you say a life plan, you mean how this person is going to be taken care of?
[Counsel for HRS]: And the course. His deposition was taken July 1st. He does not have one and what would have to happen is Doctor Clark, the rehab expert who I deposed on June 22nd of this year said that he hasn't been asked to formulate a life care plan; however, he will do so just before trial, so then he would give his life plan and all that is needed to the economist, Doctor Berk [sic], and Doctor Berk [sic] would then plug in all the figures and come into the courtroom and testifying to these.
This is prejudicial to the defense because our economist and rehab expert does not have the opportunity to rebut those numbers of calculations or the services that are needed.
This case has been going on for four and a half years. These life plans could have been prepared and they were not and to let them come in after discovery has been closed and let this go on would be prejudicial to the defense....
[Counsel for Appellee]: Two responses, Judge. First of all, Doctor Clark and Doctor Berk [sic] both testified as to their opinions in this case as to what this kid needs and how much it costs. At length they gave depositions.
What Doctor Clark testified to is that if he is asked to, he will present a care plan. He was not asked to. That's the end of that. He gave his opinions as to what this kid needs at length.
Court: I do not intend to let either side present testimony in reference to information not disclosed.
[Counsel for Appellee]: I wasn't planning on it.
Court: By today

*243 [Counsel for Appellee]: Doctor Clark gave his opinions and Doctor Berk [sic] gave his opinions.
[Counsel for HRS]: I am anticipating that he is going to come in with a life care plan and the economist will put all these numbers on it.
Court: If the information has not been disclosed as of five o'clock today, the testimony on such point will not be permitted by the court.
(Emphasis added.)
Twelve days later, on August 25, 1993, at 4:50 p.m., the day before trial was to begin, HRS was hand delivered correspondence from appellee disclosing for the first time that Dr. Burke would testify as to his newly-formed opinion that a life care plan for appellee would cost approximately $22,080,699.00. In response to HRS's objections, and in an attempt to remedy the prejudice, the trial court ordered Dr. Burke to submit to an updated deposition during the evening following the first day of trial. During the mid-trial deposition, HRS asked Dr. Burke whether he had any other opinions on the cost of the child's care and treatment; the doctor replied, "no."
At trial, the court allowed Dr. Burke to testify not only about the life care plan, but also about additional costs for care and treatment of the child, including the costs of various therapy and the cost of a van, which had not previously been disclosed to HRS. The total amount of additional costs was $6,000,000.00. The following excerpt succinctly sets forth Dr. Burke's trial testimony in this regard:
[Counsel for HRS]: And you did not hold that opinion when I took your [mid-trial] deposition twos [sic] week ago, did you?
Dr. Burke: I wasn't asked about it, no, sir.
[Counsel for HRS]: Did I specifically ask in the deposition, `Do you have other opinions as to his future medical needs and equipment'?
Dr. Burke: I do not specifically remember but that sounds like a typical kind of question you could ask, yes, sir.
[Counsel for HRS]: You had one other area?
Dr. Burke: Yes, Sir.
[Counsel for HRS]: What was that?
Dr. Burke: Therapy.
[Counsel for HRS]: This is something also that you formed afterwas that after I took your deposition two weeks ago that you formed the therapy opinion?
Dr. Burke: I was asked to put the number together afterwards, yes, sir.
[Counsel for HRS]: After I took your deposition August 27?
Dr. Burke: Yes, sir.
[Counsel for HRS]: You were asked to do additional work?
Dr. Burke: Yes, sir.
[Counsel for HRS]: By whom?
Dr. Burke: Mr. Cohen. [Appellee's counsel]
This trial testimony was the first time HRS became aware of Dr. Burke's opinion regarding the additional $6,000,000.00 in damages. HRS objected to the court's decision to allow the testimony; however, the court overruled the objection stating that HRS should have anticipated such testimony.
In addition to Dr. Burke's testimony, HRS claims that the trial court also erred with respect to the testimony of Dr. Robert Cullen, the physician who examined the child in March 1990 and again on July 31, 1993, two days after the discovery cut-off date. Over HRS's objection, Dr. Cullen was allowed to testify regarding the results of his second examination.
We believe that with respect to both discovery matters the trial court abused its discretion in permitting testimony regarding information obtained after the discovery deadline. The purpose of a discovery cut-off date was to avoid surprise to either side. As stated in Jones v. Seaboard Coast Line Railroad Co., 297 So.2d 861 (Fla. 2d DCA 1974), "litigation should no longer proceed as a game of `blind man's bluff.'" Civil trials are not to be ambushes for one side or the other. See Binger v. King Pest Control, 401 So.2d 1310 (Fla.1981); see also Grau v. Branham, 626 So.2d 1059 (Fla. 4th DCA 1993).
*244 We recognize that excluding the testimony of a witness is one of the most drastic of remedies which should be invoked only under the most compelling of circumstances. Acquisition Corp. of Am. v. American Cast Iron Pipe Co., 543 So.2d 878 (Fla. 4th DCA 1989); In re Estate of Lochhead, 443 So.2d 283 (Fla. 4th DCA 1983). As stated in Binger:
It follows, of course, that a trial court can properly exclude the testimony of a witness whose name has not been disclosed in accordance with a pretrial order. The discretion to do so must not be exercised blindly, however, and should be guided largely by a determination as to whether use of the undisclosed witness will prejudice the objecting party. Prejudice in this sense refers to the surprise in fact of the objecting party, and it is not dependent on the adverse nature of the testimony. Other factors which may enter into the trial court's exercise of discretion are: (i) the objecting party's ability to cure the prejudice or, similarly, his independent knowledge of the existence of the witness; (ii) the calling party's possible intentional, or bad faith, noncompliance with the pretrial order; and (iii) the possible disruption of the orderly and efficient trial of the case (or other cases).
Binger, 401 So.2d at 1314 (footnotes omitted).
Although Binger dealt with the failure to disclose a witness, its principles have been applied where the presentation of a changed opinion is tantamount to permitting an undisclosed adverse witness to testify. See Grau; Office Depot, Inc. v. Miller, 584 So.2d 587 (Fla. 4th DCA 1991). Applying Binger's logic to the facts in this appeal, we find that the "playing field was not level" and there was, in fact, surprise resulting in prejudice to HRS. Although the court afforded HRS the opportunity to depose one of the witnesses after the first day of the trial, HRS had no opportunity to obtain information or expert opinion to rebut the testimony of the witness and thereby cure the prejudice. The permitting of such testimony caused a disruption of the orderly and efficient trial of the case. Binger, 401 So.2d at 1314; see also Grau. As we stated in Grau:
Certainly, if prejudice can be cured efficiently, then it should. But the plaintiff takes his own risk in adopting an ambush strategy and should not profit from his own wrongdoing.... The wrongs of the attorney should not harm the innocent defendant who in good faith engaged in discovery and conducted the trial by the rules.
Grau, 626 So.2d at 1062. Accordingly, we find that the prejudice to HRS in the instant case was not cured efficiently.
Since the basis of this court's reversal was testimony affecting damages, we remand for a retrial on damages only. We affirm as to all liability issues.
Reversed and remanded.
GLICKSTEIN and FARMER, JJ., concur.