FARMER, J.
In the world of trial evidence, DNA may well be the whole megillah. It is the single, most formidable evidence in proving many sexual offenses. Because of its scientific reliability, it is often regarded as conclusive. Once inculpatory DNA evidence is well and truly laid before the jury, a guilty verdict is all but a downhill slide on a glacier.
The admission of DNA evidence has two aspects. It demands a scientific foundation of both molecular-biochemical and statistical convention: first, a sample specimen related to a crime must be shown to *639 match the DNA of an identified person (viz., defendant); second, expert statistical testimony must quantify and explain the odds of someone other than defendant having that same DNA.[1] When both parts of the foundation have been shown to point to defendant, the effect can be overpowering. Therefore the structure of both the State’s presentation and the defense’s right to attack its forensic foundation, is vital. Adequate time for the defense to prepare is indispensable.
Defendant was charged "with capital sexual battery. After an extensive pretrial period,[2] the State disclosed its expert for the second aspect of the DNA evidence only on the first day of trial. In a Richardson hearing the State attempted to justify its massively overdue disclosure by arguing that its population geneticist is its usual witness in such cases, indeed the only one the State has ever called for this purpose. The expert witness told the court he had testified in as many as 150 trials in Broward County. Defense counsel responded that she had never heard of him before the disclosure, did not know he would be called as a State’s witness, and thus had no opportunity to take his deposition to prepare for trial. Her testimony was not rebutted.
In denying the motion for the continuance, the trial court found this an inadvertent discovery violation. The court also found defense counsel had been furnished reports regarding the DNA analysis. Finally, the trial judge stressed that defense counsel had not even attempted to depose the witness in the three days of trial since disclosure.
The witness testified. Defendant was convicted. We have the appeal.
The issue is the denial of the continuance to afford a reasonable time for the defense to prepare for this crucial witness. It is significant that this particular assistant public defender had never before faced a DNA statistical expert in a courtroom. The greater experience of other assistant public defenders in the same county is irrelevant to the circumstances she was confronting for the first time. She was to be given — at best — the nights following three long days of trial to prepare to counterattack the most critical expert witness of all. After trial begins in a life felony case, there is no reasonable chance for defense counsel to prepare to meet and counter a newly disclosed expert as important as this one.
To be sure, the State had months to prepare its own DNA statistical expert. Balanced against the several months afforded the State, by the trial judge’s reckoning the defense could plausibly be given only a handful of hours at the end of three grueling days in court to prepare to test the foundational reliability of the DNA. Rushed hotel depositions in the nighttime by exhausted defense counsel cannot possibly balance the scales of preparation.[3] In our judgment, the circumstances required *640 no further showing by defense counsel as to why she needed a continuance or what she might have accomplished thereby. The lack of disclosure until trial had already begun, and her lack of sophistication in the subject, irrefutably set up an overriding necessity.
Disclosing a population geneticist on the first day of trial is in the nature of a structural delict. The effect is the same whether intentional or negligent. It sends defense counsel into battle without arms. It should not matter that the State’s failure is thought inadvertent.
Nor is it fair to place a burden on defense counsel to anticipate disclosure and somehow prepare for it. It was the State’s burden to disclose. In civil trials, the failure of the other side to disclose an expert witness before trial is usually understood to authorize opposing counsel to prepare for a trial without such evidence.[4] There is no reason why it should not be thus for criminal defense counsel.
If the State is to send an accused to prison for the rest of his life, the least it can do is give him and his lawyer fair notice of all particulars of the DNA evidence it plans to present. As a matter of elemental justice we must recognize that the nature of DNA makes any failure to disclose such evidence well before trial strikingly consequential. Hence we do not think the trial judge’s finding of no prejudice is supported by the record. Defendant could hardly have been more unfairly prejudiced.

Reversed for a new trial.

POLEN, J., concurs.
GROSS, C.J., dissents with opinion.

. See Brim v. State, 695 So.2d 268, 271 (Fla. 1997) ("The fact that a match is found in the first step of the DNA testing process may be 'meaningless' without qualitative or quantitative estimates demonstrating the significance of the match”).

. Defendant: in custody January 2006; trial: December 11-15, 2006.

. See Gran v. Branham, 626 So.2d 1059, 1061 (Fla. 4th DCA 1993) ("we strongly feel that once the trial starts the parties’ attorneys should be allowed to concentrate on the presentation of the evidence at hand. Neither side should be required to engage in frantic discovery to avoid being prejudiced by the intentional tactics of the other party. Binger [v. King Pest Control, 401 So.2d 1310 (Fla. 1981)] certainly does not require the trial court to admit this testimony”).

. See Grau, 626 So.2d at 1062 ("The wrongs of the attorney should not harm the innocent defendant who in good faith engaged in discovery and conducted the trial by the rules”).