DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**GURIN GOLD, LLC, MINDAUGAS MACIJAUSKAS,** and **STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,**
Appellants,

v.

**CHARLES DIXON,**
Appellee.

No. 4D18-2156

[July 10, 2019]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Jeffrey Levenson, Judge; L.T. Case No. CACE 15-008461 (09).

Alyssa M. Reiter of Wicker Smith O'Hara McCoy & Ford, P.A., for appellants.

Andrew A. Harris and Adam Richardson of Burlington & Rockenbach, P.A., West Palm Beach, and Todd L. Baker of Steinger Iscoe & Greene, P.A., Fort Lauderdale, for appellee.

LEVINE, C.J.

As far back as 1993, this court wrote that "[a]lthough we thought it was generally accepted that civil trials are not to be ambushes for one side or another, we are confronted here by such tactics used by the plaintiff to the prejudice of the defense." *Grau v. Branham*, 626 So. 2d 1059, 1059 (Fla. 4th DCA 1993) (citation omitted). In this case twenty-six years later, we are once again confronted with the same type of tactics. These "trial by ambush" tactics were wrong in 1993, and they remain wrong today.

In the present case, plaintiff's expert witness at deposition testified regarding plaintiff's MRI examination from 2014. That expert specifically had not viewed MRIs from plaintiff's prior accident in 2010. Defense counsel in opening statement told the jury that his expert witness, on the other hand, had viewed both the 2010 and 2014 MRI results. Only then, long after the discovery deadlines and in the middle of trial after defense counsel had committed to a certain line of defense, did plaintiff's counsel

show his expert the 2010 MRI. After this mid-trial review, plaintiff's expert witness compared the two MRIs and opined to the jury that the herniation depicted in plaintiff's 2010 MRI had in fact "gone up" in the later MRI due to the plaintiff's accident with the defendant driver. Further, plaintiff's expert witness for the first time testified to the different quality of each MRI derived from two different machines. We find that the trial court erred in allowing the plaintiff's expert witness to testify for the first time at trial about the MRI from 2010. Thus, we reverse and remand for a new trial.[1]

This case arises out of a 2014 automobile collision where appellant Macijauskas collided with a car driven by appellee. The only issue at trial was the extent of appellee's injuries caused by the collision.

Prior to trial and pursuant to a pre-trial discovery order, appellee disclosed Dr. Myers as his treating physician after the 2014 accident. During a deposition, Dr. Myers testified to viewing MRI scans of appellee taken in 2014. Appellee told Dr. Myers about a prior injury from 2010, but Dr. Myers did not view any scans, X-rays, or medical records relating to this prior injury. Dr. Myers assigned appellee a 7% permanent impairment rating, concluding that appellee's pre-existing condition was "permanently aggravated or exacerbated by the motor collision dated 7/21/2014."

During opening statements at trial, appellants addressed Dr. Myers's anticipated medical opinion, commenting that the jury was "going to be able to weigh and judge is there a basis for the opinion. . . . Maybe the person who is giving opinions didn't have all the information that they needed to be able to make that conclusion." Significantly, appellants stated that their own expert would be able to testify based on comparisons of the 2010 and 2014 MRIs.

On the second day of trial, counsel for appellee showed the 2010 MRI to Dr. Myers for the first time. During a proffer of Dr. Myers outside the presence of the jury, he admitted to viewing appellee's 2010 MRI for the first time that day. Dr. Myers also acknowledged that he had new opinions based on his review of the 2010 MRI. For example, he opined that one could not compare the two MRIs since the magnets used for each MRI differed in strength. Dr. Myers continued that although the two MRIs could not be compared due to differing magnet strengths, he could still conclude that "the disc herniation, although you are not comparing identical films, shows a progression of the herniation on the new film."

---

[1] Appellants raise three other issues we find to be without merit or not to necessitate a reversal.

Appellants moved to exclude any testimony or new opinions pertaining to reading the 2010 MRI or conclusions regarding the comparability of the MRI scans. Appellee's counsel maintained that there was no change in Dr. Myers's testimony, although counsel acknowledged that Dr. Myers's testimony about the MRIs was "to some extent" important to the case.

The trial court initially granted appellants' motion to exclude, concluding that Dr. Myers's testimony now was "completely prejudicial" and "not fair" to appellants:

> THE COURT: All right. I think what you did is egregious. I think it was inappropriate. This is not trial by ambush. If you are going to bring in additional information, you are duty-bound to disclose that to the other side. You didn't do that.
>
> . . . .
>
> THE COURT: You look mystified. The two things the judge does—the one thing the judge does not want is surprises, okay. This is a surprise. Okay. Obviously, you didn't show it to him between the time he took the depo and now, and you showed it to him in the hallway.

After a brief adjournment, however, the trial court vacated its prior ruling and allowed Dr. Myers to testify about the 2010 MRI and the comparability of the two MRIs, concluding that Dr. Myers had not changed his opinion and that appellants' cross-examination on proffer was effective in addressing the new testimony. The trial court further described Dr. Myers's testimony as being only a "weight issue."

At trial, in front of the jury, Dr. Myers testified to reviewing both the 2010 and 2014 MRIs and noted that they were "two MRIs from two different machines that are of two different quality." Dr. Myers also concluded that the disc herniation depicted in the 2010 MRI had "gone up" in the 2014 MRI. Later in the trial, appellants' expert—who had reviewed both MRIs within the parameters of discovery—testified that the 2014 MRI showed no changes from the 2010 MRI. During deliberations, the jury asked to see both the 2010 and 2014 MRIs. At the conclusion of the trial, the jury returned a verdict finding appellants negligent and liable for damages. Appellants moved for a new trial raising several issues. The trial court denied the motion for new trial. Appellants appeal the final judgment in favor of appellee.

A trial court's decision to admit evidence, including a decision to admit

allegedly new or surprise testimony, is reviewed for an abuse of discretion, as limited by the rules of evidence. *See Grau*, 626 So. 2d at 1059. Further, "it is an abuse of discretion to allow a party at trial to change . . . the substance of testimony given in pretrial discovery." *Menard v. Univ. Radiation Oncology Assocs., LLP*, 976 So. 2d 69, 71 (Fla. 4th DCA 2008).

When a witness is undisclosed and then is offered for testimony at trial, the focus should be on the potential prejudice to the objecting party. *Binger v. King Pest Control*, 401 So. 2d 1310, 1314 (Fla. 1981). In *Binger*, the Florida Supreme Court observed, "[p]rejudice in this sense refers to the surprise in fact of the objecting party, and it is not dependent on the adverse nature of the testimony." *Id.* One consideration in the *Binger* prejudice analysis is "the objecting party's ability to cure the prejudice or, similarly, his independent knowledge of the existence of the witness." *Id.* Another is whether the party calling the witness intentionally failed to comply with a pre-trial discovery order. *Id.*

The *Binger* rule has been extended from undisclosed witnesses to disclosed witnesses who offer previously undisclosed testimony. *Dep't of Health & Rehab. Servs. v. J.B. By & Through Spivak*, 675 So. 2d 241, 244 (Fla. 4th DCA 1996). As this court has previously determined, "the presentation of a changed opinion is tantamount to permitting an undisclosed adverse witness to testify." *Id.* In *J.B.*, this court concluded where the defendant "had no opportunity to obtain information or expert opinion to rebut the testimony of the witness," prejudice occurred that could not be cured. *Id.*

In the present case, appellants were confronted with new and additional undisclosed testimony during trial and after opening statements which pertained to the comparison of two different MRIs as well as Dr. Myers's conclusions regarding the content of the two MRIs. Prior to this undisclosed additional testimony, appellants had given an opening statement telling the jury that they would hear from an expert, Dr. Myers, "who is giving opinions" but "didn't have all the information that they needed to be able to make that conclusion."

Further, appellants relied on their expert being the only witness who had compared the 2010 and 2014 MRIs. Appellee was obviously attempting to bolster his case by showing Dr. Myers the 2010 MRI after appellants had relied on the cut-off of discovery and the commencement of trial. This type of undisclosed additional testimony, after appellants had made that representation to the jury in reliance on the fact that this was the state of the evidence, is the type of ambush-based prejudice that *Binger* seeks to prevent. *See Binger*, 401 So. 2d at 1314 (describing

prejudice as focusing on surprise-in-fact).

Prejudice also arises from the fact that appellants had to confront the undisclosed additional testimony of Dr. Myers regarding the comparability of two different MRIs and how differing magnet strengths might prevent accurate comparison. Appellants in the middle of trial were unable to counter this testimony with expert testimony of their own on the same subject.

As discussed above, *Binger*'s prejudice analysis considers "the objecting party's ability to cure the prejudice or, similarly, his independent knowledge of the existence of the witness." *Id.* This case is not one where appellants "should have anticipated" Dr. Myers's new testimony. *See J.B.*, 675 So. 2d at 243. In his deposition, Dr. Myers stated that he had never seen the 2010 MRI and in fact did not consider it necessary in reaching his opinion. Given this testimony, appellants could not have expected Dr. Myers to opine on the subject of the 2010 MRI. Nor could appellants have effectively rebutted Dr. Myers's new testimony. While they conducted what the trial court described as a "very effective" cross-examination of Dr. Myers's proffer, appellants could not in the middle of trial respond to Dr. Myers's new testimony regarding relative MRI strengths, a subject that was completely new in the proceeding.

Contrary to the trial court's conclusion, the change in Dr. Myers's testimony was more than just a "weight issue," and the fact that appellants' attorney was able to undercut Dr. Myers's ability to testify on MRI technology did not remove the prejudice of allowing Dr. Myers to open up an entirely new area of testimony dealing with a technical matter important to the interpretation of evidence. On-the-spot cross-examination attacking Dr. Myers's credentials might have helped to lessen the prejudice, but under the circumstances of the case, without more this could not be said to have cured the error.

The record demonstrates that appellants were prejudiced by appellee's intentional noncompliance with the pre-trial discovery order. *See Binger*, 401 So. 2d at 1314. All of the cut-off dates in the pretrial discovery order had expired before the trial commenced. Discovery orders must mean something. "Clearly, except under extraordinary circumstances which do not exist here, the lawyers have a right to expect that once a trial commences, discovery and examinations must cease." *Grau*, 626 So. 2d at 1061. Like in the present case, where appellants' counsel told the jury that appellee's expert did not have all the information, "lawyers who make the opening statement must have a reasonably firm idea of what the evidence will show." *Id.* "Once the trial starts the lawyers are engaged in

the unfolding of the evidence they have already collected. That is why there are discovery cutoffs." *Id.* In this case, the lawyers should have been able to rely on the discovery cut-offs and not be "ambushed" by additional undisclosed testimony without the benefit of gathering their own witness to rebut this new undisclosed testimony.

The prejudice from a mid-trial medical examination is not merely due to the nature of the new and additional undisclosed testimony, but also a result of the surprised party's inability to counter the new testimony with testimony or evidence. As we have already observed,

> It is not enough that the defendant simply know what a witness may say before he testifies. Prejudice also exists by the fact that appellant is unable to counter the offered testimony. . . . Furthermore, we strongly feel that once the trial starts the parties' attorneys should be allowed to concentrate on the presentation of the evidence at hand. Neither side should be required to engage in frantic discovery to avoid being prejudiced by the intentional tactics of the other party.

*Id.*

The trial court got it right at first by initially granting the motion to exclude Dr. Myers's new testimony and finding that appellee's tactics were "egregious" and a "trial by ambush." Then the trial court reversed its ruling and erred.

To conclude, we reiterate and restate the obvious. Once trial has commenced, it is no longer the time for gathering evidence or presenting new evidence to a party's own physician witness in order to get additional testimony. After opening statements, unless there exist "extraordinary" circumstances, the time for development of new testimony is long past. *See id.* Thus, for all the above stated reasons, we reverse and remand for a new trial.

*Reversed and remanded.*

DAMOORGIAN and KUNTZ, JJ., concur.

\* \* \*

***Not final until disposition of timely filed motion for rehearing.***