DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**CLAUDIA KRYSIAK,**
Appellant,

v.

**SHELLYANN DAWSON** and **H and J CONTRACTING, INC.,**
Appellees.

No. 4D19-1532

[July 8, 2020]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; David A. Haimes, Judge; L.T. Case No. CACE 12-18278 (04).

Kenneth J. Kavanaugh of Kenneth J. Kavanaugh, P.A., Davie, for appellant.

Stuart J. Freeman of Freeman, Goldis & Cash, P.A., St. Petersburg, for appellee, Shellyann Dawson.

Sharon C. Degnan of Kubicki Draper, Orlando, for appellee, H and J Contracting, Inc.

GROSS, J.

This is a case where the disclosure of new evidence on the eve of trial forced a trial judge to untangle the Gordian knot of the process required by *Binger v. King Pest Control*, 401 So. 2d 1310 (Fla. 1981), and its progeny. The trial judge admirably balanced the competing interests and we affirm the final judgment.

Krysiak was the plaintiff below. Nearly 70 years old at the time of trial, she suffered a brain aneurysm in 1994, resulting in paralysis on her left side. The aneurysm affected her ability to walk, so she began using a power chair in 1997.

Over the years, Krysiak suffered multiple accidents involving the power chair, both before and after the 2011 accident at issue in this case.

### The Accident

On December 13, 2011, while Krysiak attempted to cross a road in Broward County, she was struck by a vehicle driven by Dawson. The accident occurred in a construction area where H and J Contracting ("H&J") was widening the road.

Krysiak was thrown from her power chair and suffered a fractured ankle. She underwent surgery, which involved the insertion of pins, rods, and screws. The surgery left scars, and she testified that one of them "has a tendency to occasionally break open."

Krysiak told the jury that she had "some flexibility" in her left ankle before the accident. After the accident, her left ankle was larger than her right ankle and she lost all flexibility in her left ankle. She could no longer make micro-adjustments to maintain her balance, which made standing more dangerous and resulted in several falls.

### The Lawsuit

In 2012, Krysiak sued Dawson and H&J, alleging that her injuries were caused by Dawson's careless operation of her vehicle and H&J's negligent failure to maintain safe pedestrian traffic ways.

### Compulsory Medical Examination in December 2017

Dr. Zager, a defense psychiatrist, conducted a compulsory medical examination of the plaintiff in December 2017. The doctor testified at trial that he "saw no evidence" that the plaintiff had a stress disorder at the time he interviewed her, and that "[h]er primary diagnosis was a mood disorder that has been in existence for over 20 years."

Dr. Zager opined that he did not think the plaintiff had "a permanent psychiatric impairment secondary to [the 2011] motor vehicle accident and fractured ankle."

### Dr. Donegal's January 2018 Deposition

In a January 2018 deposition, the plaintiff's treating psychotherapist, Dr. Donegal, testified that the plaintiff suffered from depression and anxiety. Significantly for this case, Dr. Donegal testified that the plaintiff did **not** have posttraumatic stress disorder (PTSD):

Q. Any posttraumatic stress disorder symptoms? Is that for her or her family?

A. Oh, no. This is for her. Sometimes I write off. If you look over here . . . this is assessment PTSD, no.

### *The Plaintiff's Witness Lists*

In January 2018, the plaintiff filed the following witness lists: (1) an expert witness list, which listed her engineering expert, Ralph Aronberg, as her sole expert witness; and (2) a witness and exhibit list, which did not specifically list Dr. Donegal, but adopted Dawson's witness list. Dawson's witness list, in turn, identified Dr. Donegal as a witness, but did not state her anticipated testimony.

### *First Delay of Trial*

The trial was originally scheduled for the three-week period beginning February 5, 2018, but was delayed because the trial court granted H&J's motion for leave to amend its affirmative defenses.

### *The Pretrial Order*

In April 2018, the trial court entered a Uniform Trial Order (the "Pretrial Order") setting the case for trial during the three-week term beginning September 4, 2018. The Pretrial Order stated that, no later than 90 days prior to trial, the parties were required to furnish to opposing counsel "all information regarding expert testimony that is required by" Florida Rule of Civil Procedure 1.280(b)(5)(A).[1] The Pretrial Order further required that, ten days prior to trial, all pretrial discovery "shall have been completed." The Pretrial Order also required the parties to complete a Joint Pretrial Stipulation by the time of the Pretrial Conference. Finally, the Pretrial Order stated that the parties "shall attach" witness lists to the Joint Pretrial Stipulation, that "[o]nly those witnesses listed shall be permitted to testify," that "[a]ll expert witnesses and their specialties shall be designated," and that "[a]ll witness lists shall include a brief description of the substance and scope of the testimony to be elicited from such witnesses."

---

[1] The Pretrial Order cites Rule 1.280(b)(4)(A), but it is apparent that the trial court meant Rule 1.280(b)(5)(A).

### The Joint Pretrial Stipulation

On September 4, 2018, the parties filed their Joint Pretrial Stipulation. The plaintiff's witness and exhibit list from January 2018 was attached to the Joint Pretrial Stipulation. As noted above, that witness list did not list Dr. Donegal as a witness, but instead adopted Dawson's witness list, which did include Dr. Donegal. Neither list described "the substance and scope of the testimony" to be elicited from Dr. Donegal.

Also attached to the Joint Pretrial Stipulation was the plaintiff's exhibit list from September 2018, which listed Dr. Donegal's deposition as an exhibit.

### Trial Rescheduled to February 2019

The case was not reached during the September 2018 trial docket. The trial was reset for the three-week period beginning February 4, 2019. The order resetting the trial stated that the previously filed Pretrial Stipulation would apply.

### Plaintiff's Counsel's Email on the Eve of Trial

On the morning of February 5, 2019, the trial court notified the parties that trial would commence the following day.

Later that morning, plaintiff's counsel sent the defense lawyers an email stating in relevant part: "I met with Karlin Donegal Ph.D. on 2/1/19 and learned that she performed an assessment on Claudia Krysiak on 10/10/18 and determined that Claudia suffers from Posttraumatic Stress Disorder (PTSD)."

### Defendants' Motion in Limine

Shortly after receiving this email, the defendants filed a motion in limine to exclude evidence that the plaintiff had been diagnosed with PTSD, arguing that the introduction of "last minute expert opinion" would amount to "trial by ambush" and would prejudice them under the standard set forth in *Binger*. The defendants complained that they were prejudiced because they prepared for trial "not knowing the Plaintiff would be claiming [PTSD]," as they "previously deposed Dr. Donegal who previously testified that the Plaintiff was not diagnosed with PTSD." The defendants argued that "they cannot rebut this new claim of damages on the eve of trial," as their psychiatric expert, Dr. Zager, never addressed the issue.

The defendants focused on the timelines of the new disclosure—(1) the new opinion arose on October 10, 2018, but was not disclosed until February 5, 2019; (2) plaintiff's counsel met with Doctor Donegal on February 1, 2019, but did not disclose her new opinion to the defendants until February 5; and (3) plaintiff's counsel waited until after the case was called for trial to make the disclosure.

### *Pretrial Discussion and Order Granting Motion in Limine*

When the parties appeared for trial, the trial court heard the motion in limine.

Defense counsel argued that the case had been litigated for six years and that the prejudice from the new PTSD claim could not be cured because the defendants would have to depose the plaintiff, depose Dr. Donegal, and then have Dr. Zager review the new information.

In response, plaintiff's counsel argued, among other things, that (1) Dr. Donegal was a treating psychotherapist, not an expert, (2) plaintiff's counsel had no obligation to "seek out an update on a treating psychotherapist," and (3) excluding the PTSD diagnosis would deny the plaintiff her "constitutional right to put on the full testimony of a treating psychotherapist."

During this discussion, the trial court recognized the difficulties with conducting multiple new depositions during the ongoing trial. He broached the notion of a continuance and asked plaintiff's counsel to discuss the matter with his client, since the parties were in the courtroom for trial with the jurors waiting outside.

After a short recess, plaintiff's counsel did not request a continuance. Instead, he insisted that Dr. Donegal be permitted to testify without any restrictions placed on her use of the term PTSD, and stated that he had no objection to reopening discovery, depositions and all.

Defense counsel responded that the court should not reopen discovery in the middle of trial, and that the "case needs to go" forward because it had been pending for six years and the defense had already spent time, money, and effort preparing for trial.

The trial court granted the motion in limine because the record was "crystal clear that the first time the Defendants" learned of the PTSD diagnosis "was in an e-mail that was sent over yesterday." The trial court

also noted that, had the case come to trial on the September 2018 docket, there would have been no PTSD diagnosis and the issue would not have arisen.

However, the trial court emphasized that it would allow testimony concerning the plaintiff's symptoms and how the accident affected her—just not the PTSD diagnosis itself. Additionally, when ruling on a separate defense motion in limine, the trial court ruled that it would allow Dr. Donegal to give testimony on the permanency of any psychological symptoms.

### *Trial*

During trial, the plaintiff described the 2011 accident and the injuries she suffered as a result. She also admitted that she had an accident in June 2018 in which she was hit by a car while riding in her power chair.

Dr. Donegal testified regarding her treatment of the plaintiff. Additionally, Dr. Donegal's excluded testimony was proffered to the trial court outside the presence of the jury.

During the proffer, Dr. Donegal testified that when she assessed the plaintiff in 2013, the plaintiff did not meet the criteria for PTSD. However, beginning in 2018, the plaintiff presented new symptoms that seemed like she could be experiencing PTSD. Dr. Donegal performed another assessment on October 10, 2018, and determined that the plaintiff met the criteria for PTSD. Dr. Donegal performed yet another assessment on January 23, 2019, and determined that the plaintiff still met the criteria for PTSD. Dr. Donegal diagnosed the plaintiff with PTSD "with delayed onset," noting that PTSD "is something that can present itself up to even 50 years after the traumatic incident." Dr. Donegal attributed the PTSD to the 2011 accident, rather than the 2018 accident, because "[t]he life-threatening event occurred in 2011" and the plaintiff "did not feel like her life was threatened in 2018." However, Dr. Donegal never testified—either in her trial testimony or in the proffer—that the plaintiff suffered a permanent psychological injury.

Following the proffer, the trial court again denied plaintiff's request to present Dr. Donegal's PTSD testimony to the jury. The trial court reaffirmed its ruling on the motion in limine, emphasizing the length of time the case had been pending, the absence of the PTSD diagnosis in the deposition, the disclosure of the new testimony on the day before trial, and the 2018 accident, which the defense would be entitled to explore as the triggering factor for the new PTSD diagnosis. The court further pointed to

the impracticality of conducting extensive discovery while the trial was ongoing.

As an expert witness on permanency, an orthopedic surgeon testified for the defense that the plaintiff did not sustain a significant permanent loss of an important bodily function due to the 2011 accident.

### Verdict and Final Judgment

The jury returned a verdict finding negligence on the part of Dawson which was a legal cause of injury to the plaintiff, but that there was no negligence on the part of H&J.  The jury also found that the plaintiff was negligent, apportioning 25% of the fault to Dawson and 75% to the plaintiff.  Finally, the jury found that the plaintiff did not sustain a permanent injury as a result of the 2011 accident.

Because the jury found that the plaintiff did not suffer a permanent injury, the verdict form instructed the jury to skip the question concerning the plaintiff's non-economic damages, which were the only damages sought on the verdict form.  Thus, the jury's findings resulted in a defense verdict for both Dawson and H&J.

### The trial court did not abuse its discretion in limiting Dr. Donegal's testimony on the eleventh-hour PTSD diagnosis

We write to address plaintiff's claim that the trial court erred in its exclusion of the PTSD diagnosis.

A trial court's ruling on whether to admit evidence, including new or surprise testimony, is reviewed for an abuse of discretion.  *Gurin Gold, LLC v. Dixon*, 277 So. 3d 600, 603 (Fla. 4th DCA 2019).

In *Binger*, the Florida Supreme Court held that while a trial court can properly exclude the testimony of a witness whose name has not been disclosed in accordance with a pretrial order, the court's discretion is "guided largely by a determination as to whether use of the undisclosed witness will prejudice the objecting party."  401 So. 2d at 1313–14.  "Prejudice" in this sense means "surprise in fact," and is not dependent on the adverse nature of the testimony.  *Id.* at 1314.

Other relevant factors in a *Binger* analysis include: (i) the objecting party's ability to cure the prejudice or, similarly, its independent knowledge of the existence of the evidence; (ii) the calling party's possible

intentional or bad faith conduct; and (iii) the possible disruption of the orderly and efficient trial of the case. *Id.*

"The *Binger* rule has been extended from undisclosed witnesses to disclosed witnesses who offer previously undisclosed testimony." *Dixon*, 277 So. 3d at 603. "As this court has previously determined, the presentation of a changed opinion is tantamount to permitting an undisclosed adverse witness to testify." *Id.* (internal quotation marks omitted).

The Florida Supreme Court has emphasized "not only compliance with the technical provisions of the discovery rules, but also adherence to the purpose and spirit of those rules in both the criminal and civil context." *Scipio v. State*, 928 So. 2d 1138, 1144 (Fla. 2006). The "spirit and purpose" of the discovery rules require "the disclosure of a substantial reversal of opinion . . . if a party intends to offer that changed opinion at trial." *Office Depot, Inc. v. Miller*, 584 So. 2d 587, 590–91 (Fla. 4th DCA 1991).

Civil trials are not the Wild West, where one side ambushes the other at trial. *See Grau v. Branham*, 626 So. 2d 1059, 1059 (Fla. 4th DCA 1993). Except under extraordinary circumstances, "the lawyers have a right to expect that once a trial commences, discovery and examinations must cease." *Id.* at 1061. "All the discovery rules and the extensive efforts of parties to discover the other party's case would be for naught if one side were able to wait until after the trial started to establish key pieces of evidence . . . ." *Id.*

Florida courts have applied a *Binger*-type analysis where a treating doctor formulates a new opinion based upon an examination of the plaintiff that occurred after the doctor's deposition. *See Auto Owners Ins. Co. v. Clark*, 676 So. 2d 3, 4 (Fla. 4th DCA 1996) ("[I]t was error to permit plaintiff's neurosurgeon to give testimony regarding a treatment session which occurred after the discovery deadline in the suit, and to formulate a permanent impairment rating on the witness stand when he had not rated plaintiff's impairment when deposed."); *Colonnell v. Mitchels*, 317 So. 2d 799, 800–01 (Fla. 2d DCA 1975) (holding that the trial court abused its discretion by permitting the treating physician of one of the plaintiffs to testify that an examination, which took place after the pretrial conference, indicated that the condition of the plaintiff's knee would continue to get worse, which differed from the physician's deposition testimony that he expected no material change in the knee's condition).

Here, the trial court did not abuse its discretion in excluding evidence that Dr. Donegal diagnosed the plaintiff with PTSD, as this new opinion

first revealed itself to the defendants on the eve of trial. The plaintiff did not accept the trial court's tentative offer of a continuance, so the court crafted a ruling that limited the unfair prejudice imposed on the defendants while allowing much of the testimony to go forward.

The plaintiff is correct that the Pretrial Order did not expressly require her to update the opinion of a treating healthcare provider. Nonetheless, the disclosure of a new diagnosis of PTSD on the eve of trial violated the parties' Joint Pretrial Stipulation concerning the substance of Dr. Donegal's testimony. The Pretrial Order required the filing of a Pretrial Stipulation. In the September 4, 2018 Pretrial Stipulation, the plaintiff did not separately list Dr. Donegal; rather, the plaintiff adopted Dawson's witness list, which included the doctor. Contrary to the Pretrial Order, however, this witness list failed to "disclose the substance and scope" of the doctor's testimony. Still, the plaintiff's exhibit list to the Pretrial Stipulation listed Dr. Donegal's deposition as an exhibit, which was tantamount to a representation that the substance of her testimony was set forth in the deposition. No amended Pretrial Stipulation was filed. Under these circumstances, the defense could justifiably expect that Dr. Donegal's testimony would be consistent with her deposition. The defendants were thus misled when they learned of Dr. Donegal's new diagnosis on the eve of trial, even if plaintiff's counsel did not intend to mislead them. As the trial court found, the defendants were prejudiced within the meaning of *Binger* and its progeny.

The plaintiff focuses on a constitutional right to present all relevant evidence, but that right is subject to reasonable procedural restrictions that ensure that the process is fair. *See United States v. Scheffer*, 523 U.S. 303, 308 (1998); *see also Montana v. Egelhoff*, 518 U.S. 37, 42 (1996) (plurality opinion) ("[T]he proposition that the Due Process Clause guarantees the right to introduce all relevant evidence is simply indefensible. . . . Relevant evidence may, for example, be excluded on account of a [party's] failure to comply with procedural requirements.").

We affirm on the other issues raised without comment.

*Affirmed.*

KUNTZ, J., and CURLEY, JOSEPH, Associate Judge, concur.

*      *      *

**Not final until disposition of timely filed motion for rehearing.**